MARY A. BOWEN *vs.* NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

Suffolk.   March 11, 1909. — May 22, 1909.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Assignment. Bailment. Damages. Negligence.*

In order that the assignee of a chose in action may maintain an action thereon in his own name under R. L. c. 173, § 4, the assignment must have been executed and delivered before the date of the writ.

The bailee of a chattel which is destroyed by the negligence of another may maintain an action for the loss of his special property in it, and, with the consent of the general owner, he may recover the full value of the chattel.

In an action against a railroad corporation by the proprietor of a truck, in which a heavy chattel was brought to the freight yard of the defendant to be delivered to servants of the defendant for transportation, for injury to the chattel through the negligence of the defendant's servants when lifting it from the plaintiff's truck by means of a derrick, if there is evidence that the driver of the truck, who was the servant of the plaintiff, assisted in making the hitch of the chain that fastened the chattel to the derrick, the defendant is entitled to have the jury instructed that the plaintiff cannot recover from the defendant if he or his agents or servants contributed to the injury.

TORT, brought by Mary A. Bowen, who was engaged in the teaming and trucking business, as the assignee in writing of James H. Roberts and Daniel G. Langlands, the manufacturers and owners of a fly wheel delivered at the defendant's freight yard at East Cambridge for transportation over its railroad and alleged to have been injured and destroyed through the negligence of the defendant's servants when lifting it from the plain-

tiff's wagon by means of a crane or derrick. Writ dated July 16, 1907.

The declaration originally was as follows:

" First count: And the plaintiff says that she is the assignee of James H. Roberts and Daniel G. Langlands, both of Boston, in said county.

" And the plaintiff says that the defendant is a common carrier for hire of passengers and freight, and received for carriage from the plaintiff's assignors at Boston, in said county, one large fly-wheel in two parts, the property of the plaintiff's assignors, on or about the fourteenth day of June, in the year 1907. And the defendant, in consideration of a certain freight to be paid by the plaintiff's assignors, agreed and undertook to carry said fly wheel from said Boston to Stafford Springs, in the State of Connecticut, and there to deliver the same, but that said defendant failed so to deliver the same, and the said fly wheel is wholly lost and destroyed."

" Second count. And the plaintiff says that she is the assignee of James H. Roberts and Daniel G. Langlands, both of Boston, in said county.

" And the plaintiff says that the defendant operates a steam railroad in said Boston, and is a common carrier for hire of passengers and freight over and upon said railroad, and that the defendant received from the plaintiff's assignors, on or about the fourteenth day of June, in the year 1907, a certain large fly wheel, the property of the plaintiff's assignors, to be safely carried by it, that the defendant, its agents and servants, did not safely carry said fly wheel, but so negligently, carelessly and improperly received and handled, and managed said fly wheel that they wholly destroyed it."

A third count, added later by amendment one day before the date of the return of the verdict, was as follows:

" And the plaintiff says that she is the assignee of James H. Roberts and Daniel G. Langlands, both of Boston in said county.

" And the plaintiff says that the defendant operates a steam railroad in said Boston, and is a common carrier for hire of passengers and freight over and upon said railroad, and that on or about the fourteenth day of June, 1907, the plaintiff's assignors

tendered unconditionally a certain large fly wheel to the defendant for transportation over its railroad; that the defendant, by its agents and servants, carelessly, negligently and improperly handled and managed the said fly wheel and that they wholly destroyed it."

A still later amendment, filed by consent two days before the date of the allowance of the bill of exceptions, was as follows:

" And now comes the plaintiff in the above entitled cause and moves to amend her declaration by striking out the words ' And the plaintiff says that she is the assignee of James H. Roberts and Daniel G. Langlands, both of Boston in said county.' "

In the Superior Court the case was tried before *Pierce,* J.

One Grady, a witness called by the plaintiff, testified on direct examination that in June, 1907, he was employed by the plaintiff and took a fly wheel weighing about two tons from J. H. Roberts and Company, East Cambridge, to the Boston and Albany yards in Boston; that he drove under a crane and then went over to the platform and told one Wood, the man in charge, that he had a fly wheel; that Wood said he would send some men over to take it off; that there were three men at the derrick when he drove up; that he had seen these men before at the platform but not at the crane. The fly wheel was in two parts, resting on the flanges with the hub up. He then testified as follows:

" Q. What did these men do with the fly wheel which was on your team?

" A. Well, I got the ropes off the wheel to make it ready for them, and I supposed they were going to take one wheel off, one half, and one of the men there said, ' We will take the two of them off.' It was getting late, it was then between half past four and five o'clock; so I supposed they knew their business and — So they put the chain around the two of them and got down on the winch and started to wind it up, and when they got the strain on it got about a little way out of the wagon and I heard a break and I told them to stop, so they stopped, and Mr. Wood came over between some cars; I told him what had happened, and he passed some remark, I couldn't say just what it was, that they couldn't receive it; so I told him not to touch the wheel until I reported to my boss. So I went up and tele-

phoned to my boss, Mr. Bowen,* and he come down and looked at it to see how the thing was, and told me to leave the wagon there and take the horses off and take them away."

He further testified that the wheel was in good condition, that a chain was used to lift the wheel and was wrapped around the hub ; that there was no block between the hubs, but they were lying right close together ; that he had nothing to do with making the chain fast to the fly wheel, did not give any instructions to anybody, and did not have anything to do with lifting it.

On cross-examination he testified that he had never unloaded machinery from a crane before, but that he knew how to unload a fly wheel such as he had ; that he could not have unloaded it alone as it was too heavy for one man to handle ; that Wood was one and one half times the length of the court room away from the crane on the platform ; that he told Wood that he had a fly wheel, as he expected Wood to send over some men to help him and wanted him to do so ; that he was on and off the team while the hitch was being made ; that some one might have handed him the end of the chain while the hitch was being made ; that he did not know which man actually made the hitch ; that he did not know all of the men on the team. In a written statement admitted to be signed and certified to by him, introduced in evidence by the defendant as an exhibit for the purpose of contradicting the witness, he said :

" I drove right up under the crane and found three of the railroad hands there. I said that we had better take one half of the wheel at a time. This was the first thing said by any one. I supposed of course that it was part of their duty to help me. They said that it would be all right to take both pieces together and make one job of it, that it was getting late. I got down on the ground and began unroping the wheel from the wagon, while the three railroad hands put the chain around the wheel and made the hitch. When I got the ropes off from below I got up on the team and helped hold the two parts of the wheel together while one of the men finished putting the chain around them. I wanted to help out as much as possible in making the hitch. When the hitch was all made the railroad hands went over to the derrick and began turning the cranks. We wanted to raise it a

---

* The plaintiff's son, who carried on the teaming business for her.

little from the wagon to see if the hitch was O. K.  As soon as the strain came three of the spokes broke.  The wheel was not raised a single inch from the wagon.  The men stopped turning as soon as the spokes snapped.  I gave no orders about making the hitch or running the derrick, but trusted to the railroad men; for I thought that they knew more about such things than I."

On re-direct examination he testified that he remembered passing the end of the chain to one of the men on request; that when a teamster came into the Boston and Albany yard with a heavy object "they had men there to unload, he helped, of course."

On re-cross examination he testified that he understood that he was there to help and intended to help so far as he could in unloading.

One Langlands, a witness called by the plaintiff, testified that he was the sole surviving member of the firm of James H. Roberts and Company, that in June, 1907, he employed Bowen to cart a fly wheel from his factory in Cambridge to the Boston and Albany yards; that when he found the wheel was broken he told Bowen that Bowen must either give him a clean receipt from the railroad for this wheel or pay him for it; that Bowen paid him for the wheel in full and he gave Bowen a receipted bill for the wheel; that he executed the assignment.  The receipted bill and the assignment were put in evidence.  The bill was dated July 26, 1907, and was for "one split fly sold to C. Bowen for $325, with a freight charge of $12.50."  The assignment was dated August 3, 1907.  This was the only assignment introduced in evidence.

Langlands further testified that if a wheel is in two parts and the hubs are short and do not come together and there is no blocking between, a wrap hitch would pull the centre out, which would result in the breaking of the spokes; to lift the two parts together it would be necessary to put a block between the hubs unless separate hitches were made; that this fly wheel weighed from three to five tons.

On cross-examination he testified that he sent a bill to Bowen, who protested against paying it at first, but he told Bowen he would hold Bowen liable, as he knew nobody else, and then Bowen paid in full, getting a receipt in full; that he intended to

release Bowen from all further liability; that a check dated August 9, 1907, was given by Bowen in payment; that the assignment in evidence was signed by him a few days before the trial but merely carried out his previous intention.

On re-direct examination he testified that he agreed to put Bowen into his place against the Boston and Albany Railroad.

There was other evidence both for the plaintiff and the defendant.

At the close of the evidence, the defendant asked the judge to rule that there was not sufficient evidence to warrant a finding for the plaintiff, and asked him to instruct the jury that the plaintiff was not entitled to recover. He also asked for other instructions of which the fifteenth was as follows: "15. The plaintiff cannot recover from the defendant if she or her agents or servants contributed to the injury."

The judge refused to order a verdict for the defendant, or to give any of the instructions requested. He submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $364.50. The defendant alleged exceptions.

*G. H. Fernald, Jr.*, for the defendant.

*W. Flaherty*, for the plaintiff.

SHELDON, J. The plaintiff's declaration as originally drawn set forth a cause of action which had become vested in her assignors, Roberts and Langlands; and this is true also of her third count, which apparently was filed at the trial. Her right to maintain the action in her own name accordingly depends upon the provisions of R. L. c. 173, § 4: "The assignee of a non-negotiable legal chose in action which has been assigned in writing may maintain an action thereon in his own name, but subject to all defenses and rights of counterclaim, recoupment or set-off to which the defendant would have been entitled had the action been brought in the name of the assignor." But the bill of parcels which she received from her assignors and the assignment of the cause of action which she took from them bear dates subsequent to July 16, 1907, which was the date of her writ; there was no evidence that either instrument was delivered before that time; and there was direct evidence put in by the plaintiff that the assignment had been executed only a few days before the trial. Accordingly the plaintiff, when she brought

her writ, was not the assignee of this chose in action, nor had it been assigned in writing. It follows that she cannot maintain the action as such assignee. Indeed, this was conceded by the plaintiff's counsel at the argument in this court.

But the plaintiff had as bailee a special property in the fly wheel which is the subject of the action, and so might sue in her own name for the injury to it, and, at any rate, with the consent of the general owner, could recover full damages therefor. *Brewster* v. *Warner*, 136 Mass. 57. But it is difficult to see in her declaration, even with the amendment made after the trial and shortly before the allowance of the exceptions, a statement of any such cause of action. The averment is only of a wrong done to her assignors by an injury to their property. But passing over this objection, which does not appear to have been specifically taken at the trial, it is manifest that if she sued in her own right, it would be a defense if the negligence of herself or her agents or servants contributed to the injury. The jury might have found that there had been such negligence in Grady, her driver; and the defendant's fifteenth request should have been given in substance. In any event, therefore, there must be a new trial.

As the case seems to have been tried upon the theory that the plaintiff could recover as assignee for the damage done to the property of her assignors, and as apparently only that question was called to the attention of the judge at the trial, it is not likely that the other questions presented will be raised again in the same way; and they need not be considered.

*Exceptions sustained.*