METAL PACKAGE CORPORATION *vs.* CHARLES B. OSBORN.

*Action by Bailee—Injury to Thing Bailed—Sale of Goods—*
*Claim for Defects—Waiver as to Time—Evi-*
*dence—As to Goods Sold Others.*

A bailee of personal property may recover for injuries to, or the loss of, such property while in his possession, caused by the acts of persons other than the owner of the property.

p. 376

In case of *locatio operis faciendi,* the bailee may recover against third parties damages for injury to the subject of the bailment, he holding the damages so recovered, in excess of his own interest, as trustee for the bailor.          pp. 376, 377

The right of one who received another's corn as bailee, for the purpose of canning it, to recover against one who had sold cans to him, for damage to the corn by reason of defects in the cans, under a clause in the contract for the sale to him of the cans, was not affected by the fact that, after the corn was canned, the cans and their contents passed out of his possession into that of their owner, the bailor, the use of the defective cans, which caused the loss, having occurred while the corn was in the bailee's possession.                    pp. 378, 379

A provision, in a contract for the sale of cans to a canner of corn, that the seller should not be liable for cans, or contents thereof, after they left the buyer's possession, *held* to have been waived, as regards a claim by the buyer on account of corn damaged by defects in the cans, by the seller's action in inspecting the corn in the cans after they had been removed from the buyer's possession, in directing the destruction of the damaged corn, and in recognizing a limited liability on his part on account of the damage.                    pp. 379, 380

In an action by a canner of corn for damage to corn canned by him, alleged to have resulted from defects in the cans sold him by defendants, *held* that there was no evidence legally sufficient to justify the grant of a prayer submitted by defendant, based on the hypothesis that the damage might have resulted from the use of non-sanitary corn by plaintiff, insufficient machinery, or improper methods of canning.        pp. 380-383

On an issue as to the presence of defects in cans sold by defendant to plaintiff, a canner of corn, evidence offered by defendant that, on the days on which it shipped cans to plaintiff, it had shipped cans to others, which were free from defects, *held* to be inadmissible, defendant having in its factory three can making machines, one of which might have been temporarily imperfect in operation, while the others were working properly, it not appearing that all the cans in question were delivered on the same days, and defendant having admitted responsibility for a portion of the defects discovered in cans sold to plaintiff and used by him.                    pp. 383-385

*Decided April 9th, 1924.*

Appeal from the Circuit Court for Baltimore County (DUNCAN, J.).

Action by Charles B. Osborn against the Metal Package Corporation of New York. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, ADKINS, OFFUTT, and DIGGES, JJ.

*Stevenson A. Williams,* with whom were *W. Gill Smith, Fred R. Williams* and *Harley & Wheltle* on the brief, for the appellant.

*Elmer J. Cook* and *Thomas H. Robinson,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

On the 9th day of July, 1919, Charles B. Osborn, the appellee, a canner of shoepeg corn, near Aberdeen, in Harford County, Maryland, entered into a contract with the Boyle Can Company, a corporation, engaged in the manufacture of cans used in the canning of corn, by which said company agreed to sell to Osborn, and he agreed to buy from it, all cans used by him in all the factories owned or controlled by him for the term beginning with the date of the contract and ending on the 31st day of December, 1921.

By the contract the seller agreed "to pay to the buyer packers' cost of all cans and the contents of all cans, * * * which shall have been spoiled by leaks, exceeding two cans per thousand, provided said leaks are shown to be the result of faulty workmanship in the manufacture of side and bottom seams of cans."

After the execution of the contract, and while it was still in force, the Boyle Can Company, prior to the year 1921, sold and assigned its business, together with all its unfulfilled contracts, to the appellant, the Metal Package Corporation of New York, which assumed the fulfillment of the unfulfilled contracts made by the Boyle Can Company with its customers, including the contract made with the appellee.

It is shown from the record that the business of canning corn, especially shoepeg corn, is very extensively carried on

in Harford County. The statement appears in the record that ninety-eight per cent. of all the shoepeg corn canned in the United States is canned in that county. It is also shown that to can the best grade of shoepeg corn, known as the "fancy grade," it must be canned at once upon the ripening of the corn, for if delayed beyond that time, the corn when canned will fall to a lower grade, known as the "standard" grade. It sometimes happens that a packer finds he cannot can his corn as fast as it ripens, especially in years of great yields, as in 1921. At such times he calls upon other packers who are not in the same position to can some of it for him. This was the condition that F. O. Mitchell & Brother, canners at Perryman, Harford County, whose factory is only a few miles from the factory of the appellee, found themselves in in the canning season of 1921. In this situation Osborn agreed to can for them 5,000 cases of shoepeg corn. This was about the first of September, fifteen days after the opening of the corn-canning season. Osborn had been canning his own corn to that time, using the cans furnished to him by the appellant under the above mentioned contract; and in canning the corn for F. O. Mitchell & Brother he continued to use the cans furnished him by the appellant. Up to that time he had used four carloads of cans and had discovered nothing wrong with them; that is, no unusual number of swells and leaks had developed from the use of them. But after canning the corn of F. O. Mitchell & Brother, which had been hauled by him from their field nearby, he sent it by rail to F. O. Mitchell & Brother's factory. Upon reaching there, while still in the car and upon the railroad tracks, F. O. Mitchell & Brother discovered that the corn was in bad condition. The leakage from the cans was running out of the car, and the odor therefrom was extremely offensive. They at once, before taking the corn from the car, communicated with Osborn, and he in turn notified the appellant of its condition. An inspection followed, in which the representatives of the appellant participated, which resulted in the claim being made by Osborn that the condition

of the corn was caused by the defective construction of the cans, in that the side and bottom seams had not been properly soldered when made.

After this the appellee resumed the canning of his own corn, using the cans furnished by the appellant, and the same condition, as to the corn placed therein, resulted from the use of them. Again an inspection followed, in which the representative of the appellant again participated, but as the parties were unable to agree upon a basis of settlement, the appellee sued out a non-resident attachment against the appellant, under which certain machinery valued at nine hundred dollars, belonging to the appellant, was attached.

Thereafter the attachment was dissolved, and the attached property released upon the appellant filing a bond, in the penalty of one thousand dollars, to stand in the place of the property attached. The case then proceeded to trial upon issues joined on pleas to the short note or declaration filed in the attachment proceedings, which contained five of the common counts and a special count upon the contract made by the appellee with the Boyle Can Company, the fulfillment of which was thereafter assumed by the appellant.

In the course of the trial fifteen exceptions were taken to the rulings of the court, thirteen to its rulings upon the evidence and two upon the prayers.

The plaintiff offered one prayer, which was granted. The defendant asked for six instructions, all of which were refused except the sixth, which placed the burden upon the plaintiff "to establish by the greater weight of evidence the issue joined on his part."

By its first prayer the court was asked to instruct the jury that the plaintiff was not entitled to recover *for the contents* of the 1,024 cases of corn packed by the plaintiff for F. O. Mitchell & Brother; by its second, that the plaintiff was not entitled to recover the *value of the cans* in which said corn was packed, or canned, for F. O. Mitchell & Brother; and by its third prayer, that the plaintiff was not entitled to recover for the cost of labor furnished by F. O. Mitchell &

Brother in overhauling the cases of corn so packed by them for the plaintiff.

These prayers were offered upon the theory, first, that the plaintiff, *as bailee,* could not recover against the defendant for those things mentioned in the prayers, and second, if a bailee could ordinarily recover in cases of this class, the plaintiff, as such, could not recover in this case, because of the provision in his contract with the defendant, in which it is stated that such "guarantee as applied to fruits and vegetable cans shall expire on January 1st, and as to oyster cans, on July 1st, succeeding date of delivery and all claims for leaks must be filed in writing with the seller on or before said dates. *Seller shall not be liable for cans, or contents of same, after they have left the possession of the buyer."*

The law seems to be well settled that a bailee of personal property may recover for injuries to, or the loss of, such property while in his possession, caused by the acts of persons other than the owner of the property. 3 *R. C. L.* 49; *Central Railroad of New Jersey* v. *Bayway Refining Co.,* 81 N. J. L. 456; *Bowen* v. *New York Cent. & H. R. R. Co.,* 202 Mass. 263; 6 *Corpus Juris,* 1149; *Amer. Dist. Telegraph Co.* v. *Walker,* 72 Md. 454; and many other cases that might be cited. The right of the bailee to maintain an action for such loss and injury to the property is based upon his special property therein, and his actual possession or right of possession at the time of such loss and injury. 3 *R. C. L.,* page 51.

The bailment in this case is a species of bailment known as *locatio operis faciendi,* and, as stated by Van Zile on Bailments, section 138, "in this class of bailment, from its very nature, it will be seen that the bailee not only has the right to the possession, but has a special property in the thing bailed, and perhaps a greater interest than in other classes of bailment, because in the performance of the bailment he necessarily mingles with the property of the bailor furnished to him his labor, and often material, in order to carry out the contract; and more than this, he has the property by con-

tract and is employed to do upon it certain work and labor, and thus reap a benefit to himself. * * * And so the bailee, without question, cannot only maintain an action against third parties for an injury to his possession, and as to that he is the only party who can during the continuance of the bailment maintain such an action, but the general current of authority seems to be that the bailee can include in such suit damages for the entire injury to the subject of the bailment." In such cases, as stated by the same author, in section 58 of his work, "The damages are not confined to the mere interest of the bailee, but in case of injury or loss of the property he may recover its full value, together with any special damage to him, and for all beyond his own interest he would be a trustee for the bailor or owner."

In this case, the appellee, under his contract with F. O. Mitchell & Brother, was to can for them five thousand cases of corn. They, of course, were to furnish the corn, and the appellee was not only to provide the labor in canning it, but it devolved upon him to purchase the cans in which the corn was to be canned. These he bought from the appellant, and his contract with the latter for the purchase of said corn contained, as stated above, a provision in the nature of a guarantee by which the appellant was to pay to the appellee "packers' cost of cans and contents for all cans, * * * which shall have been spoiled by leaks, exceeding two cans per thousand, provided said leaks are shown to be the result of *faulty workmanship in the manufacture of side or bottom seams of cans.*"

Of the corn canned for F. O. Mitchell & Brother, 1,024 cases, as claimed by the appellee, were spoiled and rendered absolutely worthless by leaks resulting from faulty workmanship in the manufacture of side or bottom seams of the cans. The cans containing the spoiled corn, with other cans containing corn that was not damaged or spoiled, were sent by rail to F. O. Mitchell & Brother, though it was not known at the time that the corn was spoiled.

The suit in this case was brought to recover for the total

loss of corn which spoiled in the cans, and for the cans and cases that contained the spoiled corn, which were worthless thereafter, as well as for the cost of labor expended in canning the corn, together with the item of cost expended by F. O. Mitchell & Brother in overhauling the cans and separating the good from the bad corn.

The three prayers of the defendant now under discussion have relation only to the alleged losses sustained by the appellee in canning the corn of F. O. Mitchell & Brother. It is the claim of the appellant, as expressed by these prayers, that the appellee had no right of action against the appellant because, as contended by it, the cans and their contents, on reaching the factory of F. O. Mitchell & Brother, had passed out of the possession of the appellee, and the bailment had ceased. If the appellant be correct in its contention that they had at such time passed out of the possession of the appellee, this fact, we think, is not the test by which the plaintiff's right of action in this case should be determined.

The values of the 1,024 cases of corn and the cans in which it was placed were totally destroyed *while in the possession of the appellee by the use of cans* which were improperly made and furnished by the appellant, in violation of the contract under which they were purchased. That is to say, *the use of the defective cans,* which, as claimed by the appellee, caused the loss of the subject matter of the bailment for which suit is here brought, was at a time when the bailment was still in the possession of the appellee or bailee.

The appellee being in possession of the bailment at such time, and having a special property therein, he, in our opinion, had a right of action against the appellant to recover for the alleged losses sustained by him, unless such right was denied to him by some provision of the contract between them.

The case before us differs from the case of *Morse* v. *Andrascoggin R. R. Co.,* 39 Maine, 285, cited by the appellant and largely relied upon by it. A dealer in Boston sent cloth cut into coats to the plaintiff in Maine to be made into coats

and returned to him.   Upon the completion of the coats they
were left with and delivered to the depot master of the de-
fendant, to be so forwarded.   The coats were placed in a box
properly marked to the dealer in Boston and the carriage
charges paid thereon.   The court said, under the facts of
that case, when this was done "his whole duty had been per-
formed," and he, "having ceased to be a bailee and to have
any special property in the coats *before they were injured
or lost,* the plaintiff cannot maintain the action."

In this case the loss occurred while the property was still
in the possession of the appellee or bailee, and when he still
had a special property therein.

The answer of the appellee to the second claim of the
appellant, in support of these prayers, is that the effect given
by it to the provision contained in the contract, that the
seller shall not be liable for cans or contents of same after
they have left the possession of the buyer, is not justified
when considered in connection with other provisions of the
contract closely related thereto and the fact, as shown by the
evidence, that leaks may not develop for weeks or months
after the corn is canned; and it was not the intention of the
parties that, when the canned goods were once shipped from
the factory and passed out of the canner's possession, he was
to be placed in a position in which he would be unable to
avail himself of the guarantee when leaks thereafter de-
veloped.

The appellee contends that the logical and proper con-
struction of the provision is that the seller shall not be liable
"for injury to cans or contents after they have reached the
possession of the buyer," but, as stated by the appellee, in
any event, the appellant, by the conduct of its representative,
did not regard the provision as applying to this case or, if it
did so regard it, it was waived by the appellant, for, upon
being notified of the condition of the cans, the appellant at
once sent its representative to Mitchell & Brother's factory
and there examined and inspected the corn, and there-
after directed Mitchell & Brother to carry the spoiled

corn to the dump, and at the same time communicated with the appellee, telling him of the result of the examination and the number of cans with their spoiled contents for which the appellant was liable, and for which it would pay the appellee. This, so far as we can gather from the evidence, was only a few days after the first corn was sent to Mitchell & Brother's factory, and before the other had left the factory of the appellee, and it was not until considerable evidence had been taken in the case in relation to the corn canned for Mitchell & Brother, and the result of the examination made by it, that any mention was made of said provision or the effect of it. Such conduct of the appellant, we think, was a waiver of the effect of the provision, if it were held to apply to this case. Therefore, we are of the opinion that these prayers were properly rejected.

The fourth prayer of the defendant asked the court to instruct the jury that if they find "from the evidence that the damage to the shoepeg corn, cans, and the cases mentioned in the plaintiff's declaration and bill of particulars might have been directly caused by either (1) non-sanitary corn, or (2) insufficient exhaust, or (3) improper processing, or (4) improper cooling, or (5) improper capping, or (6) defective cans for which the defendant is responsible, and also find that for the five first named causes, the plaintiff is responsible, and further find that they are unable to determine which of said causes *occasioned* the damage to plaintiff's said corn, cans and cases, then they must find their verdict in favor of the defendant."

The fifth prayer is like the fourth, except in the fifth the words "was the proximate and direct cause of" are substituted for the italicized word "occasioned," in the fourth prayer.

To each of these prayers the appellee filed a special exception, upon the ground that there was no evidence legally sufficient, from which the jury could find that the damage or loss to the corn, cans, and cases, referred to in the pleading and evidence in this case, was directly caused by (1) non-

sanitary corn, or (2) insufficient exhaust, or (3) improper processing, or (4) improper cooling, or (5) improper capping.

The record in this case contains about three hundred pages of closely printed testimony and, in passing upon these exceptions, we will refer to the evidence relating to the causes named in the prayers only in a general way, and will not attempt to state it in detail.

The evidence of the appellee as to the fact of damage or loss of the corn, cans, and cases, is in harmony with that of the appellant. The only conflict, if any, is as to the cause of such damage or loss.

The witnesses called by the plaintiff consisted of the plaintiff himself, his son, the Mitchell brothers and others, canners of shoepeg corn of long experience, who had, in most instances, visited the factory of the appellee during the season of 1921, all of whom testified as to the conditions of the factory, the machinery, the method of canning, including the processing, exhausting and cooling of the corn; and all of whom, without exception, stated that the machinery used was modern and up-to-date, in good condition, and that the methods used were those used by canners of shoepeg corn generally, that in processing, exhausting and cooling the corn the plaintiff's methods were those used by successful canners of shoepeg corn, that it was processed for the usual length of time, and the exhausting and cooling of it was consistent with the usual practice followed by other canners.

In addition to this testimony, some of them testified that they examined the cans containing the spoiled corn, and stated that in most instances, when the cans had burst, the opening was upon the sides and, upon examination of the side seams, it was found that the solder was not distributed on all parts of the seam, that in places there was no solder at all. They further stated that when there was a leak in the can, the air, upon the cooling of the can, would enter, and this would cause the contents of the can to spoil, as in this case.

There was in the factory certain machinery that had either been purchased or hired from the appellant, and in their successful operation it seems that the appellant was interested. One of their representatives, Mr. Barnes, was at the factory every day, or nearly so, supervising the operation of said machinery. It was part of his duty to report each day to his employer, the appellant, the result of his observation of the working of the machines. To what extent he was to report, is not shown from the record. His reports usually made reference only to the working of the machines. No reference was made therein as to the processing, exhausting or cooling of the corn, as to the condition of the factory, or as to the condition of the finished product, until the day the appellee sent the first carload of corn to Mitchell & Brother, at which time Barnes' daily report showed there were a considerable number of swells in the corn then being canned. These reports, it seems, had to be signed by the plaintiff, and he, upon seeing the notation made by Barnes, discussed the matter with him, and every effort was made to ascertain the trouble, but without success. At no time did Barnes say anything about the processing being insufficient or faulty, or that the exhaust was not what it should have been. Nor was anything said by him about the unsanitary condition of the factory until called to the stand by the appellant, when he stated the house was old, with cobwebs in it, and the plaster, where it had been white washed, was in places falling off. He then spoke of it as being in bad condition, and attempted to explain how the canned product could have been injuriously affected thereby, saying that the cobwebs or plaster could or might have fallen in the can before it was capped, and if so, it could or might have produced the condition as to the corn here complained of.

In addition to the other evidence as to the unsanitary condition of the factory, is the evidence of Cooling, likewise a representative of the appellant, who at one time saw some corn that had been left upon the floor of the factory. He,

as he says, suggested to the son of the appellee, who was in charge of the factory, that he should wash the floor of the factory at the close of each day's work, and when told by young Osborn that he washed the floor each night, Cooling stated that he knew some canners who turned on the steam to cleanse the floor.

It is upon this evidence chiefly that the claim was made that the spoiled condition of the corn could have been produced by the unsanitary condition of the corn.

There was also evidence offered by the appellant through a chemist, a bacteriologist, and others, as to the effect of improper processing, exhausting, and cooling, upon the corn when canned, saying that, had it been improperly processed, exhausted, or cooled, the effect upon the canned product would be that which is shown in this case, but there was no evidence that we recall, after very carefully reading the record, that the corn was improperly processed, exhausted or cooled, or that any of the cobwebs or plaster, mentioned by Barnes, had fallen into the corn while it was being canned. There is, we think, no evidence legally sufficient to go to the jury upon any of the five causes named in the prayer, but if there was evidence as to some one or more of them, but not as to the others, the prayer would still be bad. The court, therefore, we think, was right in sustaining the special exceptions to the fourth and fifth prayers in refusing to grant the prayers.

As it appears to us that the plaintiff's prayer properly presents the law of the case, it was rightfully granted. This brings us to the rulings upon the evidence.

We find no errors in the court's rulings on the first, second, third, fourth, fifth, tenth, eleventh, twelfth, and thirteenth exceptions, for the reasons assigned by us in our discussion of the defendant's first, second, and third prayers.

The sixth and seventh exceptions present practically the same question. The sixth exception is to the refusal of the court to allow Cooling, the manager of the appellant's company, to testify that on the days that cans were shipped to

the appellee, in the season of 1921, other cans were shipped to other customers, and the cans shipped to them were not defective.   This testimony, we think, was inadmissible, first, because of the uncertainty of the cans shipped to others being of the same quality and workmanship as those shipped to the appellee.

The appellant had in operation in its factory three can making machines, each of the capacity of ninety thousand cans per day.   The machines were liable to become temporarily imperfect in their operation, and thus, while one or two of them may have been working properly, the other or others might not have been doing so well, and the products from the latter might have been faulty in their construction.   And thus it might have been that those delivered to other customers were good, while those delivered to the plaintiff were bad, though delivered on the same day.   It may also be said that, to make the evidence of any value for certainty, it should have been shown that the cans, used by the appellee in canning his own and Mitchell & Brother's corn, were those he got on those days on which others bought whose cans were not defective.   The appellant claims that, at the time the appellee was canning the corn of Mitchell & Brother, which was about the middle of the season, there was a rush of orders for cans, and at such time the cans were taken from the machines and run into the cars, which would be standing on the switch and, as all the machines were of the same make, and capable of doing the same character of work, that the quality of cans from each would be the same. While this may be true, it may have happened, and probably did happen, that, in the rush of orders, the appellant was at times required to go to the warehouse and there get the cans made at an earlier period.   But, in addition to this objection, the witness had already testified that he had examined the cans in question and that such examination showed that 36.67 per cent. of the defects in the cans were due to the fault of the appellant, and for so much of the loss the appellant was liable to the appellee.   It was admitted that

the inquiries sought to be made were to show that the cans bought by others were without defects, and the deduction to be drawn therefrom was that those bought by the appellee at the same time were likewise without defects, when by actual inspection made by the appellant of the cans used by the appellee, it was found and admitted by it that 36.67 per cent. of them were defective because of defects for which the appellant was responsible in the making of them.

In the seventh exception, the appellant offered to prove additional facts in connection with sales of cans made to others at the times when sales of cans were made to the appellee, but we do not think that such additional facts so change the situation as to make the evidence admissible.

The court, we think, acted properly in rejecting the evidence offered under the sixth and seventh exceptions; nor do we find any error in the court's ruling upon the eighth and ninth exceptions, the latter being very similar to the sixth and seventh exceptions. Therefore, as we find no error in any of the court's rulings, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*