EDNA GREEN *vs.* JOSEPH N. HORTON.

Middlesex.  October 5, 1950. — November 30, 1950.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Husband and Wife*, Funeral expenses. *Contract*, Implied. *Practice, Civil*, Amendment, Parties. *Assignment*.

A husband was liable for the funeral expenses of his wife, who died leaving no estate, although they had been living apart for some years previous to her death and the arrangements for her funeral were made by her daughter without the husband's knowledge or consent.

In an action of contract upon a debt, originally commenced by the creditor himself, it was proper to allow a motion to substitute as plaintiff the assignee under an assignment of the claim made by the creditor after the commencement of the action.

CONTRACT. Writ in the Superior Court dated June 28, 1949.

The action was tried before *Beaudreau*, J.

*M. S. Taylor*, for the defendant.

*M. Rosenthal*, for the plaintiff.

SPALDING, J.  This action of contract on an account annexed was originally brought by Earl S. Johnson (hereinafter called Johnson), an undertaker, to recover the funeral expenses arising out of the burial of the defendant's wife, Albertina Green Horton.  There was evidence that on December 5, 1949, after the action was commenced, Edna Green, the daughter of Mrs. Horton by a previous marriage, paid Johnson $645.75, the amount of his bill, and that he executed and delivered to her at that time an assignment of all his "right, title and interest in and to the claim and cause of action" for funeral expenses which he had commenced against the defendant.  The case was tried to a jury and there was a verdict for Johnson.  On the day following the verdict Johnson presented a motion for leave to amend the writ and declaration so as to "describe the plaintiff as: Edna Green, assignee of Earl S. Johnson."  The motion was allowed.  The defendant's exceptions to this action and to the denial of his motion for a directed verdict bring the case here.

The exceptions raise the questions (1) whether the defendant can be held liable for the burial expenses of his wife, and (2) whether the plaintiff, as assignee of Johnson, can be permitted to prosecute the action in her own name based on an assignment made after the date of the writ.

1. The following is a summary of the pertinent evidence: The defendant and Mrs. Horton were married in 1926.  It is not disputed that from 1937 to June 13, 1949, the date of Mrs. Horton's death, the defendant and his wife had not lived together.  Concerning the circumstances of their living apart the record is very meager.  The plaintiff testified "that . . . [the defendant] had to support . . . [his wife] and that . . . [the latter] had to bring him into court several times for support."  The defendant testified that "he was separated from . . . [his wife] about ten or twelve years ago; [and] that he agreed with the Probate Court to give her $7 a week."  Mrs. Horton died in a hospital but prior to going there she had resided with her daughter.  After her mother's death the plaintiff asked Johnson to get the

body at the hospital and to make out the bill to her, and that she would turn it over to her attorney "to see if she could get the money" from the defendant. Johnson performed the services in connection with the burial for which he rendered a bill in the amount of $645.75. As stated above, this was eventually paid by the plaintiff who received an assignment of the claim from Johnson. All of the arrangements for the funeral were made by the plaintiff. When Mrs. Horton died the defendant was notified, but he was not told that the funeral expenses had been incurred in his name. Mrs. Horton left no estate.

In support of the exception to the denial of his motion for a directed verdict the defendant argues that Johnson (the undertaker) dealt exclusively with the plaintiff, that the negotiations concerning the funeral were carried on without the knowledge and consent of the defendant, and that the defendant never entered into any contractual relations with Johnson. The defendant further argues that the funeral expenses were a claim against the deceased's estate. We shall confine our discussion to these contentions.

It was not necessary for the plaintiff to show that there was an express contract or one implied in fact. Recovery in cases of this sort is permitted on the basis of a contract implied in law. In *Magrath* v. *Sheehan*, 296 Mass. 263, it was recognized that a husband could be held liable for the funeral expenses of his wife, the court saying at pages 264–265, "The duty of a husband to provide a proper funeral for his dead wife and his legal liability to another for reasonable expenses justifiably incurred in providing such a funeral rest upon fundamental concepts of decency and humanity. Such a liability is not imposed upon the theory of an actual contract either express or implied in fact. It arises if at all by implication of law 'from the necessity of the case.'" See *Durell* v. *Hayward*, 9 Gray, 248; *Cunningham* v. *Reardon*, 98 Mass. 538; *Constantinides* v. *Walsh*, 146 Mass. 281; and annotation in 108 A. L. R. 1226. The plaintiff, therefore, did not have to prove the existence of any contractual relations between Johnson and the defendant. It is true

that in this Commonwealth the primary obligation for the funeral expenses of a married woman is on her estate, and if the husband pays them he is entitled to be reimbursed out of her estate if she left one. *Constantinides* v. *Walsh*, 146 Mass. 281. *Morrissey* v. *Mulhern*, 168 Mass. 412. *Magrath* v. *Sheehan*, 296 Mass. 263, 265. But here there was evidence that the wife had no estate, and in these circumstances the defendant would be liable for her funeral expenses. Whether, if the wife left property, the plaintiff would be obliged to proceed against her estate rather than the defendant is a question that does not appear to have been decided and we do not pass on it.

2. Relying on such cases as *Bowen* v. *New York Central & Hudson River Railroad*, 202 Mass. 263, and *Bloom* v. *New Brunswick Fire Ins. Co.* 268 Mass. 28, the defendant argues that the motion to amend was improperly allowed. But those cases are not in point because in both the persons who commenced the actions did not become assignees until after the actions were commenced. Those cases hold that where one commences an action in his own name as the assignee of a nonnegotiable chose in action (as he is permitted to do under G. L. [Ter. Ed.] c. 231, § 5, as amended), he cannot maintain the action unless he acquired the chose by an assignment in writing made before the action was commenced. They are based on the wording of § 5 which permits the assignee to sue in his own name in cases where the chose in action "has been assigned in writing." Obviously that must occur before the action is commenced. In the case at bar the action was commenced by Johnson whose cause of action did not depend on an assignment and his right to sue was in no way dependent on satisfying the requirements of G. L. (Ter. Ed.) c. 231, § 5. We have a case, then, of a cause of action begun by one who had a right to bring it.

In *Henri Peladeau, Lte.* v. *Fred Gillespie Lumber Co.* 285 Mass. 10, the original plaintiff, as here, made an assignment after the action had been commenced. The assignee moved to amend so that he could prosecute the action in the name

of the original plaintiff for his own benefit, and it was held that the allowance of such an amendment was proper. Thus, had the plaintiff here asked to be allowed to prosecute the action in the name of the original plaintiff for her own benefit, an amendment permitting it would have been proper. We see no reason why in justice an amendment should not be allowed to enable the plaintiff to prosecute the action in her own name. Such an amendment would enable her to "sustain the action for the cause for which it was intended to be brought" within the intendment of G. L. (Ter. Ed.) c. 231, § 51. "The cause of action exists in legal contemplation apart from those persons who may be parties to it." *Shapiro* v. *McCarthy*, 279 Mass. 425, 430. The judge did not err in allowing the amendment. To hold otherwise would be contrary to the purpose of § 51 which has been "broadly interpreted . . . so as to accomplish as to form and technical procedure whatever the justice of the case requires, unless prevented by positive rules of law." *Attorney General* v. *Henry*, 262 Mass. 127, 129–130.

*Exceptions overruled.*