FANNIE MESSINA vs. JOSEPHINE LAROSA & another.

Suffolk.    April 7, 1958. — May 2, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, &
CUTTER, JJ.

*Cemetery.   Real Property*, Cemetery lot.   *Equity Jurisdiction*, Cemetery.
*Equity Pleading and Practice*, Parties, Decree.

A by-law of a cemetery association requiring approval of the board of
directors in advance for the removal of monuments was reasonable
and was binding on the widow of a deceased proprietor of a lot in the
cemetery, and she had no right to remove a monument from the lot
without the directors' approval although she was one having "pos-
session, care and control" of the lot.   [442]

A sister and heir of a woman who died intestate and without children
and was buried by her husband in his cemetery lot, on which he caused
a monument commemorating her to be erected, had, after his death,
standing to maintain a suit in equity to compel return of the monu-
ment to the lot upon its unlawful removal therefrom.   [442]

A court of equity had power to compel return of a commemorative monu-
ment to a cemetery lot from which it had been unlawfully removed,
and to prevent burials in the lot without right.   [442–443]

In the circumstances, after burial of a wife by her husband in a cemetery
lot of which he held a "deed" entitling him to bury two bodies therein,
followed by burial of him in the lot by his second wife and later by
removal of his remains elsewhere by her, it was proper in a suit in
equity by a sister of the first wife having standing to maintain it to
order the second wife to surrender the "deed" of the lot to the ceme-
tery association and to enjoin the association from burying or per-
mitting to be buried in the lot the remains of any one other than the
husband.   [443]

In a suit in equity in which the only defendants before the court were a
cemetery association and the widow of a deceased proprietor of a lot
in the cemetery and the final decree properly ordered return to the
lot of a monument in whose unlawful removal therefrom the widow
had participated, a further provision of the decree that, upon return
of the monument, "all persons, firms and corporations" except the
association be enjoined from removing the monument was too broad
and should be modified so as to enjoin only the defendant widow.
[443]

Where it appeared that, after burial of a husband and his first wife in his
cemetery lot on which a monument bearing the names and dates of
births and deaths of both was erected, a second wife of the husband,
his widow, caused his remains to be moved to another place in the

cemetery and she and the cemetery association participated in unlawfully removing the monument also to that place, a final decree in a suit in equity by a proper party, ordering the widow to surrender the "deed" of the lot to the association, ordering the association to return the monument to the lot, and ordering the widow to cause to be eradicated from the monument all names and dates except those respecting the first wife, with a provision that if the widow failed to comply with the eradication order the plaintiff should be entitled to recover from her the reasonable cost thereof not in excess of a stated amount, should be modified in the circumstances so as to order the association to cause the eradication to be done and to entitle it to recover the reasonable cost not exceeding such amount from the widow. [443]

BILL IN EQUITY, filed in the Superior Court on June 15, 1956.

The suit was heard by *Bolster*, J.

*Dante J. DeMichaelis*, for the defendant LaRosa.

*Jacob Stone*, for the plaintiff.

WILKINS, C.J.  George LaRosa, who died on October 19, 1947, had two wives, each named Josephine.  The first wife (hereinafter called Josephine) died on August 14, 1935, and is buried in grave number 33 in section 117 in the cemetery owned by the defendant Italian Catholic Cemetery Association.  George was for some time also buried in this grave.  The plaintiff is Josephine's sister.  She brings this bill in equity against the second wife (hereinafter called the defendant) and the association for a declaration as to rights in the grave and in a monument.  From a final decree in the plaintiff's favor, the defendant alone appealed.  The judge made a report of the material facts found by him, from which the facts herein set forth are taken.

Josephine died intestate and without children.  Shortly before her death she delivered to the plaintiff in George's presence a book evidencing a United States postal savings account accumulated by her from her own earnings.  She stated that upon her death she wanted the money expended for her funeral and for the purchase of a grave for herself and George and for a monument.  After her death the plaintiff delivered the book to George, who, with the plaintiff's coöperation, used its proceeds to purchase from the association a license of burial, or "deed," whereunder

George was given the right to bury two bodies in grave number 33. After Josephine's burial George, also with the plaintiff's coöperation, used Josephine's savings to cause a stone monument to be erected on the grave. On this monument there were cut Josephine's name and the years of her birth and death and George's name and the year of his birth.

Several years later George went to Italy and returned with the defendant as his wife. There are two minor sons of the second marriage. Upon George's death he was buried in the grave, the defendant making all the arrangements for the burial, and causing the date of George's death to be cut on the monument.

In January, 1956, more than eight years after George's death, the defendant caused his remains to be removed to a new grave she had purchased in the same cemetery. In May, 1956, she caused the monument to be moved to the new grave. She intended to have Josephine's dates eradicated and to have the year of her own birth cut on the monument.

The by-laws of the association require applications for disinterments and removal of monuments to be approved in advance by the board of directors. The practice, however, has been for the superintendent, upon receiving an application, to obtain the approval of the secretary which would be later ratified by the board. In the present case the practice was followed as to the disinterment, but neither the secretary nor the board gave approval for the removal of the monument.

The judge ruled (1) the plaintiff, as sister of Josephine, is a proper party plaintiff; (2) George in his lifetime was the licensee of the association with respect to grave number 33; (3) upon George's death the defendant, both individually and as the natural guardian of her two minor children, became the succeeding licensee; (4) the defendant lawfully and from proper motives caused George's remains to be disinterred from grave number 33 and to be reinterred in the new grave; (5) no body, other than that of George

(if ever moved back) shall be interred in grave number 33; (6) the removal of the monument was unlawful, and both the defendant and the association are parties to that unlawful act; and (7) upon the disinterment the defendant became obligated to eradicate George's name and the years of his birth and death from the monument.

The final decree (1) ordered the defendant forthwith to surrender to the association the license of burial, or "deed," for grave number 33, and enjoined the association from interring or permitting to be interred in that grave the remains of anyone other than George; (2) ordered the association prior to May 20, 1957, to return the monument to grave number 33 and to restore the surface to the same condition as before the removal; (3) ordered the defendant prior to May 20, 1957, to cause to be eradicated from the monument all names and dates except the name and the years of birth and death of Josephine; (4) decreed that if the defendant fail to comply with (3) the plaintiff might have a decree against the defendant for the reasonable cost to the plaintiff of the eradication, not exceeding $75; and (5) ordered that, after the monument is returned, "all persons, firms and corporations" except the association shall be enjoined from removing the monument or interfering with the soil and vegetation of grave number 33.

The plaintiff makes no argument respecting the removal of the remains of George. There is nothing for us to decide on this issue.

The association has not appealed from the final decree, and does not contest the order requiring it to restore the monument to the original position in grave number 33. See *Pierce* v. *Proprietors of Swan Point Cemetery,* 10 R. I. 227, 236, 243. The defendant's appeal shows no error in this respect. The license of burial, or "deed" so called, did not confer a fee, but was in the nature of an easement or irrevocable license to use the lot for the burial of the dead so long as the place continues to be used as a cemetery. *Trefry* v. *Younger,* 226 Mass. 5, 9. *McAndrew* v. *Quirk,* 329 Mass. 423, 425. Upon the death of George, the defendant and his

children acquired "possession, care and control during her life." G. L. (Ter. Ed.) c. 114, § 29. The defendant, however, could act only subject to the reasonable by-laws of the association. *Green* v. *Danahy,* 223 Mass. 1, 4. *Chariton Cemetery Co.* v. *Chariton Granite Works,* 197 Iowa, 403, 406. *Mansker* v. *Astoria,* 100 Ore. 435, 455. See *Abell* v. *Proprietors of the Green Mount Cemetery,* 189 Md. 363; 174 A. L. R. 978–979; 10 Am. Jur., Cemeteries, § 33; 14 C. J. S., Cemeteries, § 33. The by-law requiring the advance approval of the association to the removal of a monument was reasonable and binding upon her. See *Zimmer* v. *Congregation Beth Israel,* 203 Cal. 203; *Donohue* v. *Fitzsimmons,* 95 N. J. Eq. 125.

It is objected that the plaintiff has no standing to raise these questions. Upon the death of Josephine, George had the right, as well as the duty, to dispose of the body of his wife by appropriate burial and there was included the right to erect over the place of burial a suitable monument. *Durell* v. *Hayward,* 9 Gray, 248, 249. After his death the plaintiff, as Josephine's sister and heir, became entitled to undo the affront to Josephine's memory occasioned by despoiling her grave of its commemorative marker. *Jacobus* v. *Congregation of the Children of Israel,* 107 Ga. 518, 522. *Sabin* v. *Harkness,* 4 N. H. 415, 417. *Mitchell* v. *Thorne,* 134 N. Y. 536, 539. 10 Am. Jur., Cemeteries, § 31. 14 C. J. S., Cemeteries, § 33. This is not an application of any rule of property law, but is a recognition of principles of ethics, propriety, and common decency which equity is peculiarly qualified to enforce. See *Magrath* v. *Sheehan,* 296 Mass. 263, 264–265; *Green* v. *Horton,* 326 Mass. 503, 505; *Beatty* v. *Kurtz,* 2 Pet. 566, 584–585; *McGann* v. *McGann,* 28 R. I. 130, 134, 136.

In the view we take, it is not necessary that we consider the defendant's contention that the judge's findings as to the source of the funds used to buy the lot or erect the monument were not supported by the reported evidence. We would reach the same conclusions if the funds had been solely those of George.

There was no error in the decree in so far as it required the defendant to surrender the license of burial to the association. It was disclaimed at the arguments that she had any intention ever of causing the remains of anyone to be buried in grave number 33. To do so would be a further affront to the memory of Josephine which equity has power to prevent. This has been adequately accomplished by the first paragraph in the final decree enjoining the association from interring or permitting to be interred in grave number 33 the remains of anyone other than George. The fifth paragraph of the final decree is too broad as to those sought to be affected, namely, "all persons, firms and corporations," even if not parties served with process. It will be sufficient if the name of the defendant be substituted.

The third paragraph of the decree orders the defendant to "cause to be eradicated from said monument all names and dates thereon, except the name and years of birth and death of Josephine." This we understand to mean the name of George and the dates of his birth and death. In view of the conduct of the defendant, we think that the defendant should stand the cost of the work. Because of difficulties of enforcement of the decree, a sufficient order will be that the association, and not the plaintiff, cause the work to be done, and that the defendant pay the association not exceeding $75 for the reasonable cost thereof. We think it proper to impose this duty on the association both because of its participation, contrary to its by-laws, in the removal of the monument and because the certificate of burial is now to be surrendered to it.

The final decree is to be modified as follows: Paragraph II; change date from "May 20, 1957," to "May 30, 1958." Paragraphs III and IV; strike out and substitute "III. That the defendant association prior to July 20, 1958, shall cause to be eradicated from the monument all names and dates thereon, except the name and the years of birth and death of Josephine LaRosa, first wife of George LaRosa. IV. That the defendant association may have a decree against Josephine LaRosa for the reasonable cost thereof,

not exceeding $75." Paragraph V; strike out "all persons, firms and corporations" and substitute "the defendant Josephine LaRosa." As so modified, the final decree is affirmed with costs of this appeal to the plaintiff against the defendant Josephine LaRosa.

*So ordered.*