COMMONWEALTH *vs.* ANTHONY M. FAMIGLETTI.

Norfolk.    February 13, 1976. — October 6, 1976.

Present: KEVILLE, GOODMAN, & ARMSTRONG, JJ.

*Public Officer. Pleading, Criminal,* Indictment. *Cemetery,* Desecration. *Words,* "Substantial value."

At the trial of a municipal employee indicted under the provisions of G. L. c. 268A, § 3 (*b*), evidence warranted a finding that the defendant requested and received a $50 payment for himself to perform an act within his official responsibility. [585-587]

A payment of $50 to a municipal employee to perform an act within his official responsibility was "of substantial value" within the meaning of G. L. c. 268A, § 3(*b*). [587]

The provisions of G. L. c. 272, § 73, are applicable to acts of wilful destruction by a cemetery official. [588]

INDICTMENTS found and returned in the Superior Court on October 9, 1974.

The cases were heard by *McNaught*, J.

*Morris M. Goldings* (*Herbert D. Friedman* with him) for the defendant.

*J. Blake Thaxter, Jr.,* Special Assistant District Attorney, for the Commonwealth.

GOODMAN, J.   The defendant, who was at all times material the superintendent of the cemetery department of the city of Quincy, appeals (G. L. c. 278, §§ 33A-33G) from four convictions each under a separate indictment. One of the indictments charged that the defendant "being a municipal employee did ... directly solicit and accept money for himself to perform an act within his official responsibility in violation of Chapter Two Hundred and Sixty-Eight A, Section Three (b) of the Massachusetts General Laws." Particulars furnished by the Commonwealth specified, among other matters, that the defendant

on July 1, 1972, accepted $50 in cash. The other three indictments charged the defendant with violations of G. L. c. 272, § 73: One indictment charged that he "did wilfully mutilate, deface and injure a gravestone"; a second indictment charged that he "did wilfully remove and destroy a gravestone"; and the third indictment charged that he "did wilfully remove a tomb and did maliciously disturb the contents of a grave." The indictments were tried without jury.

We discuss the indictments and summarize so much of the evidence as is necessary to decide the issues which the defendant raises.

### *I. Indictment under G. L. c. 268A, § 3 (b)*.[1]

Aura Barton testified (and the trial judge could have found) that on the last Monday or Tuesday of June, 1972, she spoke to the defendant on the telephone regarding the removal of her husband's remains from one lot to another lot, both in the Mt. Wollaston Cemetery in Quincy. The defendant told her that the charge would be $190 to open both graves plus an additional $75 for a crane and crane operator to pick up and move the vault. She indicated that the $75 figure was too high and that she could have a relative do the moving. The defendant responded that for $50 he could arrange to have cemetery employees perform that service. The witness also testified that the defendant said that the $50 would be put in a "kitty" for the cemetery employees. She agreed to that arrangement; the defendant told her to come to the cemetery office the following Saturday, July 1, 1972, and that $50 of the payment should be in cash. On that Saturday she paid the defendant $240 in cash and received a receipt for $190 but

---

[1] That section provides that: "Whoever, being a present ... municipal employee ... otherwise than as provided by law for the proper discharge of official duty, directly or indirectly, asks, demands, exacts, solicits, seeks, accepts, receives or agrees to receive anything of substantial value for himself for or because of any official act or act within his official responsibility performed or to be performed by him ... shall be punished by a fine of not more than three thousand dollars or by imprisonment for not more than two years, or both."

not for the extra $50. The receipt stated that it was "for removal from . . . to . . .."

The rules and regulations of the department of burial places of the city of Quincy, which were introduced in evidence, provided for a charge of $190 for "removal within the cemetery." The regulations contained no listing for a separate or additional charge for the use of a crane or crane operator, and it was stipulated that the city of Quincy received $190 paid by Aura Barton but not the additional $50. Further, one William Quinn, an employee who was in charge of the "kitty"[2] beginning July 3, 1972, testified that he never received $50 from the defendant and that it could not have been deposited in the "kitty" over the weekend (July 1 and 2). He also testified that the defendant never indicated to him, orally or in writing, that he had received the $50, and there was no record of such a contribution to the fund, though records were kept. From this and the other considerable testimony as to the operation of the "kitty" the trial judge was warranted in finding that the defendant had kept the $50 "for himself," G. L. c. 268A, § 3 (*b*) (see *United States* v. *Brewster,* 506 F.2d 62, 68-70 [D.C. Cir. 1974]), and had not put it in the "kitty." It is clear from the disposition of the defendant's requests for rulings that the trial judge so found and that the conviction is based on that finding.[3] The defendant's argument, based on the hypothesis that he deposited

---

[2] This "kitty" was made up of "tips" received primarily from vault companies and funeral directors in amounts ranging from $1 to $10. "Tips" were occasionally received in connection with services by cemetery employees in the transfer of vaults from one grave to another. Distribution of the funds was made among some twenty-five employees, including the defendant, when the fund reached about $250. This might occur at intervals ranging from two to about five weeks. We express no opinion as to the legality of the "kitty."

[3] The trial judge allowed the defendant's request for a ruling that "[t]he Commonwealth must prove beyond a reasonable doubt that Fifty Dollars . . . was something of substantial value for the Defendant and that such a sum was received by him." He denied a variation of that ruling: "The Commonwealth must prove beyond a reasonable doubt that Two Dollars . . . was something of substantial value for the Defendant and that such a sum was received by him."

the amount in the "kitty" and received only one twenty-fifth of the $50, or about $2.00, is thus irrelevant (see fn. 2).

The defendant also argues that $50 is not "of substantial value" (see fn. 1) and that therefore the defendant's receipt of that sum does not violate § 3 (*b*). We disagree. Section 3 (*b*) does indeed speak of "anything of substantial value," in contrast to § 2 (*b*), requiring a corrupt intent, which speaks only of the receipt of "anything of value." Contrast the parallel provisions in 18 U.S.C. § 201 (c) (1) and § 201 (g), both of which speak of "anything of value." See *Commonwealth* v. *Dutney, ante,* 363, 375-376 (1976), discussing G. L. c. 268A, §§ 2 (*b*) and 3 (*b*), and their relationship to the Federal statute. The difference between these sections was rather clearly not inadvertent. The commission which drafted the legislation says of the subsections which ultimately became §§ 3 (*a*) through 3 (*d*): "Significant in these subsections is the provision that the thing given must be of 'substantial value'. The Commission concluded that this was a standard to be dealt with by judicial interpretation in relation to the facts of the particular case, and that it was more desirable than the imposition of a fixed valuation formula. It should be noted that to constitute a criminal act the giving or receiving of the item of such 'substantial value' must be 'for or because of' an official act." Report of the Special Commission on Code of Ethics, 1962 House Doc. No. 3650, p. 11.

We find it difficult to conceive of circumstances in which $50 in cash — even at deflated values — could not be found "substantial" in the context of § 3 (*b*). Cf. *Commonwealth* v. *Avery,* 301 Mass. 605, 606, 610 (1938); *Commonwealth* v. *Albert,* 310 Mass. 811, 814 (1942); *Commonwealth* v. *Barker,* 311 Mass. 82, 84 (1942); *Commonwealth* v. *Dowe,* 315 Mass. 217, 218 (1943). Further, it is hardly open to the defendant to argue that $50 is insubstantial when he himself has deemed it sufficiently significant to request "for or because of any official act . . . ."

The defendant's further argument that the indictment should have been dismissed because it alleges the receipt

of "money" rather than "something of substantial value" is without merit. Whatever ambiguity (if any) there may have been in the use of the word "money" was cured by the specification of $50 in answer to the plaintiff's request for particulars. *Commonwealth* v. *Valleca*, 358 Mass. 242, 244 (1970), citing G. L. c. 277, § 34. Contrast *Commonwealth* v. *Baker*, 368 Mass. 58, 67-68 (1975). See also *Commonwealth* v. *Doyle*, 323 Mass. 633, 634 (1949).

*II. Indictments under G. L. c. 272, § 73.*

The incidents on which these indictments were based (which are unrelated to the indictment previously discussed) need not be detailed. The defendant argues that the statute was aimed at acts of cemetery vandalism and has no application to cemetery officials. We see nothing in the statute which excludes from its reach the listed acts of wilful destruction when done by such officials. See *State* v. *McLean*, 121 N.C. 589, 599-600 (1897). See also *Commonwealth* v. *Viall*, 2 Allen 512 (1861). The acts, by whomever done (unless somehow authorized), present the same affront to the dead and their memory (cf. *Messina* v. *LaRosa*, 337 Mass. 438, 442 [1958]) which the statute is designed to prevent. See Proposed Criminal Code of Massachusetts, c. 269, § 9 (1972), designating offenses of this kind under the heading "Desecration." See also Model Penal Code, § 250.9 (Proposed Official Draft, 1962).

The defendant further asserts a failure of proof that the statute was violated and refers us to evidence that various government witnesses were biased and to inconsistencies in their testimony. In effect he attacks their credibility, which was for the trial judge to assess.

*Judgments affirmed.*