## COMMONWEALTH *vs.* NATHAN B. LAPHAM.

Middlesex.   May 24, 1892. — June 21, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Bribery — Allegations of Indictment — Motion to quash — Analysis of Milk.*

Even if a milk inspector is to be deemed an executive officer within the meaning of the Pub. Sts. c. 205, § 9, which imposes a penalty for bribing an executive, legislative, or judicial officer, — a proposition which is open to question, — yet it is not necessary to set out that inference of law in an indictment.

It is not necessary, in an indictment for attempted bribery of a milk inspector, under the Pub. Sts. c. 205, § 9, to aver that the corrupt intention to influence the act, opinion, decision, or judgment of the inspector was in relation to any specific and particular matter then pending before him, or which was then expected to come before him.   It is enough to aver a corrupt intention so to influence him in any matter which may be then pending, or which may by law come or be brought before him.

If, in an indictment for attempted bribery of a milk inspector, any averment of what he has already done by way of analysis or test is necessary, the averment that he caused the specimens of milk to be analyzed, or otherwise satisfactorily tested, is sufficient.   If he has done either one, he has done his duty under the Pub. Sts. c. 57, § 2.

In an indictment for attempted bribery of a milk inspector, an averment that the analysis and test showed that the milk was not of good standard quality is sufficient.   Proof that the result of the analysis or test was wrong will not relieve the defendant from the guilt of bribery.   The offence of bribery may be committed with a view to escape a prosecution, or to render acquittal certain, even though no previous offence was committed.

Every reason assigned in support of a motion to quash an indictment went on the ground that no count thereof was good.   The defendant asked a ruling that there was no evidence sufficient to support the first count, without any request as to the other counts.   *Held,* that as the court was of opinion that the first count was good, and was well supported by the evidence, it was immaterial whether the other counts were good or bad.

INDICTMENT in four counts, purporting to charge the crime of attempted bribery of one Allen, a milk inspector.

At the trial in the Superior Court, before the jury were impanelled, the defendant moved to quash the indictment, on the ground that it did not appear therein that Allen was at the time an executive, legislative, or judicial officer, or that there was then pending before him, or to come before him in his official capacity, any matter which might, could, or would be influenced by the alleged acts of the defendant; that it did not appear that

the samples of milk taken by Allen from the defendant were not of good standard quality, as required by law; and that it did not appear that the samples of milk were analyzed, or otherwise satisfactorily tested. *Hopkins*, J. overruled the motion.

The first count alleged that Allen "took certain specimens of milk, then and there being in the custody and possession of one Nathan B. Lapham, hereinafter named, with intent then and there of him, the said Nathan B. Lapham, to sell and exchange the same; and thereafterwards, to wit, on the day and year last mentioned, the said Thomas O. Allen, then and there being such inspector of milk as aforesaid, in the further performance and discharge of his duty as such inspector of milk, caused said specimens of milk so as aforesaid taken, being then and there in the custody and possession of the said Nathan B. Lapham, with the intent then and there of him, the said Nathan B. Lapham, to sell and exchange the same as aforesaid, to be analyzed or otherwise satisfactorily tested; . . . that the said analysis and test showed that the said specimens of milk, so as aforesaid taken by the said Thomas O. Allen, being then and there in the custody and possession of the said Nathan B. Lapham, with the intent then and there of him, the said Nathan B. Lapham, to sell and exchange the same as aforesaid, were not of good standard quality, in violation of the laws as aforesaid then and there in force in relation to the inspection and sale of milk; and thereupon it became the further duty of the said Thomas O. Allen, as such inspector of milk, to record the result of said analysis and test, so as aforesaid made, and preserve the result of said analysis and test as evidence, and to institute a complaint for such violation as aforesaid of the provisions of the laws as aforesaid in respect to the inspection and sale of milk then and there in force in said Commonwealth; and that the defendant unlawfully, wickedly, and corruptly devising, contriving, and intending to tempt, seduce, bribe, and corrupt the said Thomas O. Allen, then and there being an inspector of milk as aforesaid in, of, and for said city of Lowell, duly appointed and qualified as such, and as such engaged then and there in inquiring into the quality and kinds of milk sold and exchanged, and the manner and methods of the sale and exchange of milk then and there being made in said city of

Lowell, to prostitute and abuse his, the said Thomas O. Allen's trust, and to violate his, the said Thomas O. Allen's duty, as such inspector of milk as aforesaid, towards the good people of this Commonwealth in the aforesaid matters and in other matters which might and would properly come before him, the said Thomas O. Allen, as such inspector of milk as aforesaid, he, the said Nathan B. Lapham, on said thirty-first day of January, in the year of our Lord one thousand eight hundred and ninety-one, at Lowell aforesaid, in the county of Middlesex aforesaid, did wickedly, wilfully, unlawfully, and corruptly offer and give to the said Thomas O. Allen, then and there being an inspector of milk as aforesaid, a large sum of money, to wit, the sum of two hundred and fifty dollars, with intent thereby then and there wickedly, wilfully, unlawfully, and corruptly to influence the act, opinion, decision, and judgment of him the said Thomas O. Allen, as such inspector of milk, in the discharge and performance of his duties as such inspector of milk, in favor of the said Nathan B. Lapham."

The government offered evidence tending to show that Allen was duly appointed milk inspector for the city of Lowell; that the defendant was a dealer in milk in Lowell; that on January 28, 1890, Allen took from the defendant's milk wagon two samples of milk; that Allen tested said samples with the lactometer, and they stood at 12.20 and 12.60, respectively, the standard being 13.00; that on January 31, 1890, Allen met the defendant on the street, near the office of the board of health, with whom Allen had his office, and the defendant asked him how his milk stood; that Allen referred to a memorandum which he had with him, and told the defendant what the result of the test was; that Allen also said to the defendant, "You won't be prosecuted, the milk was not low enough to justify an analysis or a prosecution"; and that the defendant then said to Allen, "I want to see you," and Allen replied, "Come up into the office." They ascended the stairs toward the office together, and Allen said, "I have n't any key to the office as yet, and we may not get in, as it is about time for them to close it." Upon reaching the office, Allen partly opened the door, and the defendant then said to him, "I won't go in," and handed him a package. Allen took it, and said, "What is this?" to which

the defendant replied, " It is for you," and immediately left, without saying anything further. The package was a large closed envelope. Allen took it into the office, and exhibited it at once to certain members of the board of health who were present, and opened it. It contained two hundred and fifty dollars in bank-bills, and a sheet of paper on which was written a list of eleven names of milk dealers in Lowell, among them that of the defendant.

It further appeared, that pure milk is frequently below the standard required by law; that Allen had never known, before or since said test, of the defendant's selling or having for sale any milk which was adulterated or below the standard required by law; and that the defendant had never made to Allen any request, offer, or promise in relation to his official duties as milk inspector, except as herein stated.

The defendant requested the judge to instruct the jury that there was no evidence sufficient to support the first count. The judge declined to give the instruction.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*F. W. Qua*, (*H. A. Brown* with him,) for the defendant.

*C. N. Harris*, Second Assistant Attorney General, for the Commonwealth.

ALLEN, J. 1. By Pub. Sts. c. 205, § 9, it is made criminal corruptly to give, offer or promise a bribe to any executive, legislative or judicial officer. The present indictment for attempted bribery of a milk inspector does not set forth in terms that he was an executive officer, and therefore the defendant contends that it cannot be supported as a good indictment for the statutory offence; and that it is not a good indictment at common law, because milk inspectors are to be deemed executive officers, and therefore the bribery of a milk inspector must be indicted or punished under the statute, if at all. But even if a milk inspector is to be deemed an executive officer within the meaning of the statute, (which is open to question,) it is not necessary to set out that inference of law in the indictment. The indictment set out with sufficient fulness all necessary facts in relation to his official position, and, whether he was within the meaning of the statute or not, the objection on this ground cannot prevail.

2. Nor is it necessary in an indictment under the above mentioned section of the statute to aver that the corrupt intention to influence the act, opinion, decision or judgment of the inspector was in relation to any specific and particular matter then pending before him, or which was then expected to come before him. It is enough to aver a corrupt intention so to influence him in any matter which may then be pending, or which may by law come or be brought before him. If for example an executive, legislative or judicial officer is bribed corruptly to favor a particular person in any and all matters affecting that person which may come before such officer, without specification or knowledge of the particular matters likely to come up, the statute is broad enough to include such a case. A narrower construction of a similar statute has been adopted in Alabama, but we cannot follow it. *Barefield* v. *State*, 14 Ala. 603.

3. If any averment of what the inspector had already done by way of analysis or test was necessary, the averment that he had caused the specimens of milk to be analyzed or otherwise satisfactorily tested was sufficient. If he had done either one, he had done his duty under the statute. Pub. Sts. c. 57, § 2. Sts. 1886, c. 318, § 1; 1891, c. 58, § 3. The only object of the averment was to show that he had done his duty, and that a prosecution against the defendant might properly be instituted, and this was shown by an averment in the alternative.

4. The averment that the analysis and test showed that the milk was not of good standard quality was sufficient. The result of the analysis or test was required by law to be recorded and preserved as evidence, and a certificate of such result, sworn to by the analyzer, was made admissible in evidence in a prosecution against the defendant. If it could be shown that the result of the analysis or test was wrong, and that in point of fact the milk was of good standard quality, this would not relieve the defendant from the guilt of bribery. The offence of bribery may be committed with a view to escape a prosecution, or to render acquittal certain, even though no previous offence has been committed.

5. Every reason assigned in support of the motion to quash went on the ground that no count in the indictment was good. If any count was good, the motion to quash was properly over-

ruled. The defendant asked the court to rule that there was no evidence sufficient to support the first count. There was no request in respect to any other particular count. We are of opinion that the first count was good, and that it was well supported by the evidence. It is therefore quite immaterial whether the other counts are good or bad. *Commonwealth v. Boston & Maine Railroad,* 133 Mass. 383.

*Exceptions overruled.*