**UNITED STATES of America,**

v.

**F. William SAWYER.**

**Crim. A. No. 94–10168–NMG.**

United States District Court,
D. Massachusetts.

Feb. 8, 1995.

---

Thomas R. Kiley, Cosgrove, Eisenberg & Kiley, Boston, MA, for F. William Sawyer.

Robert L. Ullman, U.S. Attorney's Office Crim. Deputy Associate U.S. Atty., Boston, MA, for U.S.

## MEMORANDUM AND ORDER

GORTON, District Judge.

On July 7, 1994, a federal grand jury returned an indictment against the defendant, F. William Sawyer ("Sawyer"), charging him with fifteen counts of mail fraud, nine counts of wire fraud, eight counts of interstate travel with intent to commit bribery and one count of conspiracy. Pending before the Court are the following motions of the defendant:

1) eight motions to dismiss the Indictment,

2) a motion to certify questions of state law to the Supreme Judicial Court of Massachusetts, and

3) a motion to strike surplusage from the Indictment.

The Court will address the motions in the order in which they were filed.

## I. BACKGROUND

At all times relevant to the Indictment, Sawyer was a Vice–President of John Hancock Mutual Life Insurance Company, Inc. ("Hancock"). According to the Indictment, Sawyer was the chief lobbyist for Hancock in all matters coming before the Massachusetts Legislature and was a registered "legislative agent" under Massachusetts law. The Indictment further alleges that, because Hancock is chartered and headquartered in the Commonwealth of Massachusetts, the laws thereof, especially those pertaining to insurance regulation, are more important to Hancock than the laws of any other jurisdiction.

The Indictment charges Sawyer with devising a scheme to defraud the Commonwealth of Massachusetts and its citizens of their intangible right to the honest services of members of the Massachusetts Legislature, in violation of 18 U.S.C. §§ 1341 and 1343. As part of that scheme, Sawyer allegedly offered and gave to more than 25 Massachusetts legislators travel expenses, lodging, and free golf, meals and other entertainment worth more than $30,000, in violation of the laws of the Commonwealth of Massachusetts.

The Indictment further alleges that Sawyer's conduct violated the Travel Act, 18 U.S.C. § 1952, to wit, traveling and causing others to travel in interstate commerce with the intent to commit bribery in violation of M.G.L. c. 268A, § 3, the Massachusetts unlawful gratuities statute.

Finally, the Indictment charges Sawyer with engaging in a conspiracy with his supervisor at Hancock, Raeburn Hathaway ("Hathaway"). Allegedly, Sawyer and Hathaway conspired to commit the Mail Fraud, Wire Fraud and Travel Act violations described above.

## II. DISCUSSION

**A. Sawyer's Motion to Dismiss all Counts of the Indictment Predicated on Violations of Massachusetts "Gift" Laws and Rules**

Sawyer has moved to dismiss all counts of the Indictment predicated on alleged viola-

tions of the Massachusetts "gift" laws and rules, M.G.L. c. 268B, §§ 5–7, M.G.L. c. 3, § 43, and House Rule 16A(12). No count in the Indictment is based entirely on any one or all of those statutes. Sawyer, therefore, actually seeks to dismiss only certain selective paragraphs of the Indictment.

### 1. Do meals and "shared hospitality" qualify as "gifts" under M.G.L. c. 268B, § 6, M.G.L. c. 3, § 43 and House Rule 16A(12)?

The government charges Sawyer with devising a scheme to deprive the public of the honest services of Massachusetts legislators. As part of that scheme, Sawyer allegedly violated Massachusetts statutes (M.G.L. c. 268B, § 6 and M.G.L. c. 3, § 43) and House of Representatives Rule 16A(12) that restrict the amount of "gifts" that a legislative agent may offer or give to public officials.

Sawyer argues that expenditures by legislative agents for meals, beverages and other "social hospitality" are not "gifts" as that term is meant to be interpreted under M.G.L. c. 268B, § 6, M.G.L. c. 3, § 43 and House Rule 16A(12). For authority, Sawyer cites legislative history, which, he claims, distinguishes meals and what he calls "shared hospitality" from "gifts." Sawyer also relies on the fact that the State Ethics Commission had never extended the definition of "gifts" to include "shared hospitality."

### a. M.G.L. c. 268B, § 6 and House Rule 16A(12)

It is beyond dispute that statutory interpretation begins with the actual text of the statute. *See Gately v. Commonwealth of Massachusetts,* 2 F.3d 1221, 1228 (1st Cir. 1993); *Weitzel v. Travelers Ins. Co.,* 417 Mass. 149, 153, 627 N.E.2d 926, 928 (1994). When a statute's meaning is clear, the courts must enforce that statute according to its plain meaning. *See Gately,* 2 F.3d at 1228 ("statutory language must be accorded its ordinary meaning"). A court should look to legislative history *only* when the statutory language is unclear and the legislative history is unambiguous and useful in interpreting the legislative intent underlying the statute in question. *See United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69

L.Ed.2d 246 (1981); *FAIC Securities, Inc. v. United States,* 768 F.2d 352, 362 (D.C.Cir. 1985) (Scalia, J.) ("The best legislative history regarding the intent of one or another of the legislative participants is at most a clue as to what the legislating "party" had in mind; the statute itself is the party's only sure expression").

This Court finds that the language of M.G.L. c. 268B, § 6 is clear. Section 6 prohibits legislative agents from offering or giving "gifts" in excess of $100 per year to any public official or public employee. Section 1 of the same Chapter defines a "gift" as:

> a payment, *entertainment,* subscription, advance, services *or anything of value,* unless consideration of equal or greater value is received; "gift" shall not include a political contribution reported as required by law, a commercially reasonable loan made in the ordinary course of business, [bequests], or a gift received from [family members];

M.G.L. c. 268B, § 1(g) (emphasis added).

Common sense dictates that the terms "entertainment" and "anything of value" include free meals and other forms of "shared hospitality." Indeed, if the Massachusetts Legislature had wanted to exclude meals and "shared hospitality" from the statute, it could have done so, just as it excluded campaign contributions, bequests and gifts from family members. Accordingly, this Court finds that the restriction on "gifts" from legislative agents set forth in M.G.L. c. 268B, § 6 applies to gifts of free meals, lodging, tickets to sporting events, golf and other forms of "shared hospitality."

This Court further finds that the word "gifts" in House Rule 16A(12) includes gifts of free meals and "shared hospitality." That rule provides:

> No member of the House, officer, or employee shall knowingly accept any *gifts* with an aggregate value of $100.00 or more in a calendar year from any legislative agent.... (*For the purpose of paragraph 12, the definitions of "gift" and "person" are defined in Chapter 268B, Section 1(g) and 1(m).*)

House Rule 16A(12) (emphasis added).

Because the Rule adopts its definition of "gifts" from Chapter 268B, and because "gifts" in that Chapter include "shared hospitality," it follows that the word "gifts" in House Rule 16A(12) must also include gifts of free meals and "shared hospitality."

### b. M.G.L. c. 3, § 43

■ The language of Chapter 3, Section 43 closely resembles the language of M.G.L. c. 268B, § 6. Before the 1994 amendment, the last paragraph of § 43 stated:

> No legislative agent shall offer or give to any public official or public employee, as defined in section 1 of chapter 268B, or to any member of such person's immediate family gifts aggregating more than one hundred dollars in a calendar year.

M.G.L. c. 3, § 43.

If that paragraph stood by itself, the Court would have been compelled to attribute to the word "gifts" the same meaning as in M.G.L. c. 268B. That paragraph does not, however, stand alone. Rather, it is part of a more lengthy statute, and it is "fundamental that a section of a statute should not be read in isolation from the context of the whole Act." *Richards v. United States*, 369 U.S. 1, 10, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). *See also Pedraza v. Shell Oil Co.*, 942 F.2d 48, 51 (1st Cir.1991). This Court, therefore, reexamines the issue of whether the term "gifts" includes meals, entertainment and other "shared hospitality" in the context of M.G.L. c. 3, § 43.

After careful consideration of the entire statute, the Court concludes that the term "gifts" in Chapter 3, Section 43 does *not* include meals, entertainment or other "shared hospitality." The Court bases its conclusion on four grounds.

1. The first paragraph of § 43 states, in part:

> Such itemized accounting shall include, but shall not be limited to specific expenditures for *meals, gifts, transportation, entertainment* ... Where such expenditure is for *meals, entertainment, or transportation,* said expenditure shall be identified by date, place, amount, and the names of all

persons in the group partaking in or of such meal, entertainment or transportation....

M.G.L. c. 3, § 43.

If the Court interpreted "gifts" as including meals, entertainment and other "shared hospitality," that first paragraph would contain inoperative and redundant terms. It not only lists meals, gifts and entertainment separately, but it differentiates between their treatment. To include "meals and entertainment" within the meaning of "gifts" in the last paragraph of § 43 would render it entirely inconsistent with the first paragraph. *See Beeler v. Downey*, 387 Mass. 609, 617, 442 N.E.2d 19 (1982) (when a word is used in one part of a statute, it should be given the same meaning throughout that whole statute). Because a statute should not be interpreted so as to render a provision inconsistent with another provision of the same statute, this Court is obliged to read "gifts" in § 43 as exclusive and independent of meals and entertainment. *See Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) (a statute should not be interpreted so as to render one part inoperative). *See also Cohen v. Georgia–Pacific*, 819 F.Supp. 133, 138 (D.N.H.1993) (same).

2. The Massachusetts Legislature amended M.G.L. c. 3, § 43 in 1994, so that the last paragraph thereof now provides:

> ... [N]o executive or legislative agent shall knowingly offer or knowingly give to any public official or public employee, as defined in [c. 268B, § 1], or to a member of such person's immediate family any gift, as defined in [c. 268B, § 1] *of any kind or nature, nor knowingly pay for any meal, beverage, or other item to be consumed by such public official or employee* ...

M.G.L. c. 3, § 43 (effective Jan. 1, 1995) (emphasis supplied). This section, for the first time, expressly applies the broad definition of "gifts" found in M.G.L. c. 268B to that term as it is used in M.G.L. c. 3, § 43. The amendment also addresses meals and beverages and expressly includes them within the reach of § 43. The enactment of the 1994 amendment strongly implies that previously

the term "gifts" in M.G.L. c. 3, § 43 did not include meals and beverages.

3. "When all else fails to bring sufficient lucidity to the meaning of a penal statute, the rule of lenity casts the decisive vote." *United States v. Gibbens*, 25 F.3d 28, 35 (1st Cir.1994). The rule of lenity "mandates the resolution of ambiguities in a criminal statute favorably to the defendant." *Id. See also Commonwealth v. Campbell*, 415 Mass. 697, 700–701, 616 N.E.2d 430, 432 (1993). Thus, if there are any remaining ambiguities with respect to the interpretation of M.G.L. c. 3, § 43, the rule of lenity compels the Court to decide those ambiguities in favor of the defendant Sawyer.

4. The apparent inconsistency in the meaning of "gifts" in Chapters 268B and 3 does not dissuade the Court because the same word can be employed differently in two distinct statutes whether by intention or mistake. *See, e.g., United States v. Bishop*, 412 U.S. 346, 356, 93 S.Ct. 2008, 2015, 36 L.Ed.2d 941 (1973) ("It would be possible, of course, that the word 'willfully' was intended by Congress to have a meaning in § 7206(1) different from its meaning in § 7207 ...."). Moreover, the plain language of the last paragraph of M.G.L. c. 3, § 43, which refers to Chapter 268B for the definition of "public employee" but not for the definition of "gift," argues in favor of applying different meanings to the same term.

**2. Are gifts received from legislative agents subject to the statutory reporting requirements of M.G.L. c. 268B, §§ 5 and 7?**

■ Section 5(g)(5) of Chapter 268B of the General Laws requires public officials to file with the State Ethics Commission ("the Commission") a Statement of Financial Interest ("SFI") recording the source of all gifts received in the previous year if those gifts were worth more than $100 and the source of the gifts had a "direct interest" in legislation. Section 7 of the same Chapter makes it a violation to submit any false statements to the Commission.

The government claims that Sawyer had knowledge that the legislators were violating their legal duty under M.G.L. c. 268B, § 5 by failing to report gifts received from Sawyer in their SFIs. Allegedly, that knowledge played a role in Sawyer's scheme to deprive the public of the legislators' honest services.

In his motion to dismiss, Sawyer offers a six-pronged argument:

1. Section 5 did not require the legislators to report gifts that they had received from legislative agents because legislative agents did not have a "direct interest" in legislation;

2. legislators, therefore, did not have to report the gifts that they had received from him;

3. the "plain language" of the statute distinguishes between "person having a direct interest in legislation" and "legislative agents";

4. the statute would be redundant if "legislative agents" were considered "persons with a direct interest in legislation";

5. legislators could not be required to report gifts that legislative agents were prohibited from giving under M.G.L. c. 268B, § 6; and

6. the SFI forms published by the Commission were invalid because the Commission did not give the public an opportunity to comment on those forms, as required under M.G.L. c. 268B, § 3(b).

Sawyer's reliance on the "plain language" of the statute and his claim of redundancy if "person having a direct interest" is interpreted as including legislative agents is misplaced. The terms "person having a direct interest in legislation" and "legislative agent" appear together in subsections 5(g)(4) and 5(g)(7), but that does not render them mutually exclusive of each other. The Court believes it suggests, rather, that the term "legislative agent" is a sub-set of the broader class of "person[s] having a direct interest in legislation."

M.G.L. c. 268B, § 5(g) provides, in pertinent part:

Reporting persons shall disclose ...

(4) the name and address of the source, and the cash value of any reimbursement for expenses aggregating more than [$100] in the calendar year if the source of such

reimbursement is a legislative agent; or if the recipient is a public official and the source of such reimbursement is a person having a direct interest in legislation ...
(5) the name and address of the donor, and the fair market value, if determinable, of any gifts aggregating more than [$100] in the calendar year, if the recipient is a public official and the source of such gift(s) is a person having a direct interest in legislation ...
(7) the name and address of the source, and the fair market value, of any honoraria aggregating more than [$100] if the source of such honoraria is a legislative agent; or if the recipient is a public official and the source of such honoraria is a person having a direct interest in legislation ...

M.G.L. c. 268B, § 5(g).

The plain language of the first clause of Section 5(g)(4) requires a "reporting person" to disclose the name of any "legislative agent" from whom that reporting person has received reimbursement for expenses in excess of $100. Section 1 of Chapter 268B defines a "reporting person" as "any person required to file a statement of financial interest pursuant to the provisions of section 5 ..." Section 5, meanwhile, requires public officials, public employees *and* candidates for public office to file SFIs. Thus, "reporting person" applies to a broad class of persons, including public officials and certain private citizens. Under the first clause of § 5(g)(4), that broad class of "reporting persons" is required to disclose reimbursement expenses received only from "legislative agents."

But the second clause of Section 5(g)(4) specifically addresses the duties and responsibilities of "public officials," a sub-set of "reporting persons," defined in Section 1 as anyone nominated at a state primary or chosen at a state election. *See* M.G.L. c. 268B, §§ 1(q), 1(r) and 5.

A public official "acts as trustee for the citizens and the State ... and thus owes the normal fiduciary duties of a trustee, e.g., honesty and loyalty to them." *United States v. Silvano*, 812 F.2d 754, 759 (1st Cir.1987) *(citations omitted )*. Because of that fiduciary duty, and, presumably, for other prudential reasons, the Legislature enacted a law

that holds the more limited class of "public officials" to a higher standard than the general class of "reporting persons." Thus, the second clause of § 5(g)(4) requires public officials to disclose reimbursement expenses in excess of $100 received not just from "legislative agents," but from all "person[s] having a direct interest in legislation," including, but not limited to, legislative agents.

Section 5(g)(7) is drafted in a similar manner. The first clause requires all reporting persons to disclose honoraria in excess of $100 received from legislative agents. The second clause imposes a stricter burden on the "public officials" by requiring them to disclose honoraria in excess of $100 received from all "person[s] having a direct interest in legislation," including, but not limited to, legislative agents.

Section 5(g)(5), which is at issue in Sawyer's motion to dismiss, requires only public officials to report gifts in excess of $100. It does not address the larger class of "reporting persons" at all, presumably because reporting persons other than public officials do not have to disclose gifts that they have received, even gifts from legislative agents. For that reason, in § 5(g)(5) "legislative agents" are not distinguished from the larger class of "person[s] having a direct interest in legislation." Public officials are simply required to report all gifts received from "persons having a direct interest in legislation," including, but not limited to, legislative agents.

The Court therefore finds that under Sections 5(g)(4), (5) and (7), "legislative agents" and "person[s] having a direct interest in legislation" are not mutually exclusive terms and that, in fact, the former is subsumed within the latter. The Court further finds that Sawyer was a "person having a direct interest in legislation." That finding does not, in this Court's opinion, render any provision of Section 5 redundant or inoperative. *Cf. Mountain States Tel. & Tel. Co.*, 472 U.S. at 249, 105 S.Ct. at 2594. The Legislature apparently distinguished between the two categories throughout Section 5(g) in order to place a more stringent burden on "public

officials" than on the larger group of "reporting persons."

The Court rejects Sawyer's argument that legislators did not have to report gifts from legislative agents under subsection (g)(5) because such gifts were prohibited in the first place. Such an interpretation would be circular logic and would frustrate the underlying purpose of the statute. *Cf. James v. United States*, 366 U.S. 213, 216–19, 81 S.Ct. 1052, 1053–55, 6 L.Ed.2d 246 (1961) (requiring taxpayers to report and pay taxes on income derived from both legal and illegal sources).

The Court similarly rejects Sawyer's argument that the legislators did not have to disclose gifts that they received from legislative agents because the SFI forms promulgated by the Commission were invalid because he has failed to offer sufficient proof thereof. Moreover, even if the forms were improperly promulgated, and therefore invalid, such invalidity would be irrelevant to this case. As long as the legislators thought they were obliged to file SFIs truthfully, a jury could find that Sawyer's knowledge of such failure to disclose gifts was part of his scheme.

### 3. Court's Decision

In sum, the Court will deny Sawyer's motion to dismiss all counts predicated on the Massachusetts "gift" statutes. The Court agrees with Sawyer that the word "gifts" in M.G.L. c. 3, § 43 does not include gifts of meals or entertainment. Nevertheless, the Court will not for that reason dismiss any counts of the Indictment, because no one count is based solely on violations of that statute. The Court will, however, prohibit the government from relying on alleged violations of M.G.L. c. 3, § 43 to prove that Sawyer devised a scheme to deprive the Commonwealth and its citizens of their intangible right to the honest services of their legislators. The government will be allowed to prove, or attempt to prove, the existence of such a scheme based upon violations, or

knowledge of violations, of M.G.L. c. 268B, §§ 5–7.

### B. Sawyer's Motion to Dismiss All Counts Predicated on Violations of M.G.L. c. 268A, § 3 for Failure to Allege Specific Official Acts

■ The government has charged Sawyer with 33 counts of conspiracy, mail fraud, wire fraud and Travel Act violations. All of those counts are based, at least in part, on Sawyer's alleged violation of the Massachusetts unlawful gratuities statute, c. 268A, § 3.[1] That statute provides, in pertinent part:

> (a) Whoever otherwise than as provided by law for the proper discharge of official duty, directly or indirectly, gives, offers or promises anything of substantial value to any present of former state ... employee ... for or because of any official act performed or to be performed by such an employee ...
>
> shall be punished by a fine of not more than three thousand dollars or by imprisonment for not more than two years.

*Id.*

In his motion, Sawyer contends that, under the "plain language" of this statute, the government must prove that he gave the alleged gratuity in exchange for a specific official act. Because the Indictment does not allege that there was such a *quid pro quo* in this case, Sawyer argues that this Court should dismiss the Travel Act counts, Counts 26–33, and other selected paragraphs of the Indictment.

The courts of Massachusetts have not yet addressed the specific issue of whether M.G.L. c. 268A, § 3 requires proof that the "gratuity" was linked to a specific official act. Over 100 years ago, however, the Supreme Judicial Court of Massachusetts held that, with respect to a very similar gratuities statute, the government did *not* need to prove that the gift or gratuity in question was linked to any specific official act. *See Commonwealth v. Lapham*, 156 Mass. 480, 484, 31 N.E. 638 (1892).

---

**1.** The conspiracy, mail fraud and wire fraud counts are predicated upon violations of several statutes, including the Massachusetts unlawful gratuities statute, M.G.L. c. 268A, § 3. The Travel Act counts, however, are predicated solely upon alleged violations of that statute.

In *Lapham,* the defendant, a dealer in milk, was convicted under Mass.Pub.St. c. 205, § 9 for the attempted bribery of a milk inspector. The defendant appealed, claiming, apparently, that the statute required proof that the bribe was given with the intent to influence a specific act. The Supreme Judicial Court, which was then comprised of Chief Justice Field and Justices Allen, Holmes, Knowlton and Barker, rejected the defendant's argument. The *Lapham* Court found:

> Nor is it necessary in an indictment under the above mentioned section of the statute to aver that the corrupt intention to influence the act, opinion, decision or judgment of the inspector was in relation to any specific and particular matter then pending before him, or which was then expected to come before him. It is enough to aver a corrupt intention so to influence him in any matter which may then be pending, or which may by law come or be brought before him. If for example an executive, legislative or judicial officer is bribed corruptly to favor a particular person in any and all matters affecting that person which may come before such officer, without specification or knowledge of the particular matters likely to come up, the statute is broad enough to include such a case.

*Id.*

Thus, the court held that a predecessor Massachusetts gratuities statute did not contain a *quid pro quo* requirement. *Id.*

The statute at issue in *Lapham* was, of course, not M.G.L. c. 268A, § 3. Sawyer seizes on the differences between the two statutes to devalue *Lapham.*[2] The statute enforced in the *Lapham* case was Mass.Pub. St. c. 205, § 9, which stated:

> Whoever corruptly gives, offers, or promises to any [public official] any gift or gratuity whatever, with intent to influence his act, vote, opinion, decision, or judgment

on any matter, question, cause, or proceeding, which may be then pending, or may by law come or be brought before him in his official capacity, or as a consideration therewith, shall be punished by imprisonment in the state prison not exceeding five years, or by fine not exceeding three thousand dollars and imprisonment in the jail not exceeding one year.

Mass.Pub.St. c. 205, § 9.

Sawyer argues that the language "or may by law come or be brought before him in his official capacity" distinguishes the *Lapham* statute from M.G.L. c. 268A, § 3. This Court disagrees. The statutes certainly include different language, but the phrase cited by Sawyer is very similar to the phrase in M.G.L. c. 268A, § 3 "for or because of any official act performed *or to be performed*" (emphasis added). In both instances, the language at issue extends the reach of the statutes to situations where the payor of a gratuity receives the reciprocal benefit in and at some unidentified form and time in the future.

More important than the nineteenth century statutory language cited by Sawyer is the language in the same statute that required a gratuity to be paid with the intent to "influence his act ... or judgment on any matter." For all intents and purposes, that requirement is identical to the requirement in M.G.L. c. 268A, § 3, that a gratuity must be offered "for or because of an official act." Indeed, the former statute was actually narrower than M.G.L. c. 268A, § 3 because it incorporated a specific intent element, i.e. it prohibited anyone from "corruptly" giving or offering any gift or gratuity.

Because the language of the two gratuity statutes is comparable, and because the Court finds no compelling reason to discount the authority of the *Lapham* decision, this Court will rely on it here.[3] This Court,

**2.** Sawyer also cites two more recent Massachusetts cases which, he argues, undermine the authority of *Lapham. See Commonwealth v. Dutney,* 4 Mass.App.Ct. 363, 375–76, 348 N.E.2d 812 (1976); *Commonwealth v. Famigletti,* 4 Mass. App.Ct. 584, 587, 354 N.E.2d 890 (1976). Those cases, however, are not on point, and the language on which Sawyer relies is *dicta.*

**3.** This Court is further encouraged to do so by the fact that a distant Circuit Court of Appeals, the Seventh, relied on *Lapham* when passing upon an Illinois statute. *United States v. Isaacs,* 493 F.2d 1124, 1145 (7th Cir.1973) (where an Illinois bribery statute was found not to contain a *quid pro quo* requirement and the court cited *Lapham* for the proposition that: "no particular

therefore, will not require the government to prove that Sawyer gave the alleged gratuity as a *quid pro quo* for a specific act. *See Lapham,* 156 Mass. at 484, 31 N.E. 638. *See also Commonwealth v. Dowe,* 315 Mass. 217, 220–21, 52 N.E.2d 406 (1943).

Furthermore, even if this Court were to ignore *Lapham,* it would nevertheless decline to read a *quid pro quo* requirement into M.G.L. c. 268A, § 3. The language of the statute and the purpose underlying that language militate against requiring proof that the gratuity was linked to a specific official act. Again, M.G.L. c. 268A, § 3 states that it is unlawful to give a gratuity for or because of an act performed *or to be performed.* The future element, "to be performed," indicates that the more modern Legislature has attempted to prevent influence peddling and/or the appearance of such influence peddling. *Cf. Lapham,* 156 Mass. at 484, 31 N.E.2d 638; *Dowe,* 315 Mass. at 220–21, 52 N.E.2d 406.

Such a concern is especially relevant to the conduct alleged in this case. Legislators deal in every session of the Legislature with bills that have a direct and substantial impact upon the insurance industry. The defendant's alleged systematic "wining and dining" of such legislators, especially those on the Joint Committee on Insurance, can arguably be presumed to have been done, not out of a sense of true altruism, but "for or because of any official act ... to be performed by" the legislators, in violation of M.G.L. c. 268A, § 3.

Finally, the majority of federal courts that have addressed the same issue with respect to the closely analogous federal gratuities statute, 18 U.S.C. § 201(c), have adopted virtually the same position as that taken by the *Lapham* Court that "neither the ability to perform nor the actual performance of some identifiable official act as *quid pro quo* is necessary for violation of [the gratuity statute]." *United States v. Evans,* 572 F.2d 455, 481–82 (5th Cir.1978). *See Commonwealth v. Dutney,* 4 Mass.App.Ct. 363, 376 n. 16, 348 N.E.2d 812 (1976) ("many of the concepts underlying what ultimately became [M.G.L.

c. 268A, § 3] were taken from the bill then pending in the Congress of the United States which emerged in 1962 as 18 U.S.C. § 201"). *See also United States v. Standefer,* 610 F.2d 1076, 1080 (3d Cir.1979) (ruling that, under the federal gratuities statute, the government need only prove that the defendant gave a gift to a public official because of that official's position, and not solely for reasons of friendship or social purposes); *United States v. McDade,* 827 F.Supp. 1153, 1170–73 (E.D.Pa.1993) (holding that the federal gratuities statute does not contain a *quid pro quo* requirement, but rather is violated when an official receives gifts with the expectation that he will use his influence in ways favorable to his patrons). *See generally,* Norman Abrams & Sara Sun Beale, *Federal Criminal Law and its Enforcement* 234–35 (1993) ("It is the presence of the corrupt intent to influence official action (to obtain *quid pro quo* ) that distinguishes bribery from the lesser included gratuities offense").

Accordingly, this Court finds that, under M.G.L. c. 268A, § 3, the government does not have to prove that Sawyer's alleged "gratuities" were linked to any specific official acts. As a result, the government need not allege such "specific acts" in the Indictment. Because the Indictment sufficiently informs the defendant about the crime with which he is charged, the Court will therefore deny Sawyer's motion to dismiss based upon the government's "failure to allege specific official acts."

### C. *Sawyer's Motion to Dismiss the Mail and Wire Fraud Counts of the Indictment (Counts 2–25) for Lack of Fiduciary Duty*

■ Counts 2–25 of the Indictment charge Sawyer with mail and wire fraud. In those counts, the government accuses Sawyer of devising a scheme to defraud the Commonwealth of Massachusetts and its citizens of their "intangible right" to the honest services of the members of the Massachusetts Legislature.

act need be contemplated by the offeror or offeree [of the bribe]. There is bribery if the offer is

made with intent that the offeree act favorably to the offeror when necessary").

In his motion to dismiss, Sawyer relies on two cases, *United States v. Margiotta*, 688 F.2d 108 (2d Cir.1982) and *United States v. Alexander*, 741 F.2d 962 (7th Cir.1984), to argue that there are only three situations in which a defendant, who is a private citizen, can be held criminally liable for defrauding the public of its "intangible rights" to honest services under the mail fraud statute. Those situations are:

1. the defendant is a *de facto* fiduciary because of his "special relationship in the government" that causes others to rely upon him;

2. the defendant is a *de facto* fiduciary because he "in fact makes governmental decisions"; and

3. the defendant is a non-fiduciary but his co-schemer or co-conspirator was a public fiduciary.

*See Margiotta*, 688 F.2d at 121–23 (ruling that the defendant, who did not hold public office, nevertheless owed a fiduciary duty to the public because of his "*de facto* control of the processes of government," and thus could be prosecuted for defrauding the public of its intangible rights); *Alexander*, 741 F.2d at 964 (stating that "an intangible rights scheme is only cognizable when at least one of the schemers has a fiduciary relationship with the defrauded person or entity").

Because he did not have a special relationship with the government or make governmental decisions, Sawyer argues that he is not a public fiduciary. Sawyer also points out that the government did not accuse him of scheming or conspiring with any public fiduciary. (In a bill of particulars, the government alleges that Sawyer schemed with his immediate supervisor at Hancock, Raeburn Hathaway.) Consequently, Sawyer argues that, under *Margiotta* and *Alexander*, the mail and wire fraud statutes do not reach his conduct and that the counts brought under those statutes should, therefore, be dismissed. He cites in support of his argument *United States v. Gray*, 790 F.2d 1290 (6th Cir.1986) ("Only one member to the conspiracy need be a public fiduciary to support an intangible rights mail fraud indictment against all members of the conspiracy").

In construing the mail and wire fraud statutes, this Court again looks first at the statute. *See Gately*, 2 F.3d at 1228. The mail fraud statute provides, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud ... places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1341.[4]

Section 1346 of the same title, which was added in 1988, provides further:

> For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right to honest services.

18 U.S.C. § 1346.

The government charges Sawyer with devising a scheme, or intending to devise a scheme, to deprive the Commonwealth and its citizens of their intangible right to the honest services of their legislators. Sawyer's scheme allegedly would have "stolen" the honest services of the legislators by causing them 1) to breach their fiduciary duties to the electorate, and 2) to violate specific Massachusetts statutes governing the receipt of unlawful gratuities and the disclosure of gifts.

This Court finds that the government's theory fits squarely within the plain language of the mail fraud statutes. When Sections 1341 and 1346 are read together, mail fraud criminalizes the *devising of, or the intent to devise, any scheme or artifice to deprive another of the intangible right to honest services.* *See* 18 U.S.C. §§ 1341 and 1346. This composite summary of the statutes precisely describes the charge pending against Sawyer: that he devised a scheme to deprive the Commonwealth and its citizens of their right to the honest services of their legislators.

Contrary to Sawyer's argument, the mail fraud statutes do not contain any require-

---

**4.** The Court will focus on mail fraud, but the analysis is identical for wire fraud.

ment that a public official participate in the scheme. Another district court has spoken to this issue:

Section 1341 speaks of an *individual's* devising a scheme, not of two or more persons entering into a conspiracy—and nothing in *Alexander* ... can be read as somehow amending the statute to require a conspiracy between a non-fiduciary and a fiduciary before the scheming *non-fiduciary* may be held criminally responsible.

*United States v. Yonan*, 622 F.Supp. 721, 731 (D.C.Ill.1985) (emphasis in original).

This Court declines to follow *Alexander* and *Margiotta* to the extent that they imply that a public fiduciary must be a participant in the scheme. *See Yonan*, 622 F.Supp. at 729–32. Indeed, those cases, which were decided before the enactment of Section 1346, are of questionable authority with respect to the issue presented by the defendant's motion.

Furthermore, even if this Court were to follow *Alexander* and require the government to allege the participation of a fiduciary in the scheme, it would find the Indictment sufficient. The First Circuit Court of Appeals has held that the "essence of a 'scheme to defraud' within the meaning of the statute, is the existence of a plan that *if* carried out would constitute a fraud." *United States v. Allard*, 926 F.2d 1237, 1242 (1st Cir.1991) (emphasis in original). The government has sufficiently alleged that Sawyer devised a plan, that, if carried out, would have involved the participation of public fiduciaries, and therefore would have constituted fraud, even according to Sawyer's own interpretation of the mail fraud statute. *See Allard*, 926 F.2d at 1242.

For the foregoing reasons, this Court will deny the defendant's motion to dismiss predicated upon the government's "failure" to allege the participation of a fiduciary in the defendant's scheme to defraud.

**D. *Sawyer's Motion to Dismiss the Mail and Wire Fraud Counts of the Indictment (Counts 2–25) for Failure to Allege an Offense Under 18 U.S.C. §§ 1341 and 1343***

In his next motion to dismiss, the defendant relies on *McNally v. United States*, 483

U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), to support his argument that the mail and wire fraud statutes fail to proscribe acts of alleged state political corruption that do not violate state law.

Because the Court has found, however, that the Indictment does, in fact, allege violations of Massachusetts statutes, the defendant's motion is moot and will, therefore, be denied.

**E. *Sawyer's Motion to Dismiss the Mail and Wire Fraud Counts of the Indictment (Counts 2–25) Because 18 U.S.C. § 1346 is Unconstitutionally Vague***

Sawyer argues that Section 1346 is unconstitutionally vague on its face because it chills fundamental rights of free speech and association that cannot be protected on a case-by-case basis. He also asserts that the statute is unconstitutionally vague as applied to him because it 1) fails to apprise potential defendants of the conduct that is prohibited, and 2) fails to provide adequate standards to guide enforcement by prosecutors.

**1. Section 1346 is not facially vague**

Vague statutes that chill the exercise of First Amendment freedoms violate due process and, therefore, are unconstitutional. *See Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Furthermore, such laws discourage the very activity that could lead to their constitutional challenge. Thus, because citizens tend to steer wide of questionable conduct, an unconstitutional statute may avoid the scrutiny of the courts. *See Id.* Consequently, in vagueness challenges alleging infringement of First Amendment rights, courts can, and will, strike down a statute as vague and facially invalid even if that statute is not vague as applied to the specific defendant in question. *Id. See also In the Matter of Bithoney*, 486 F.2d 319, 324 n. 9 (1st Cir.1973).

To warrant the striking down of a statute as facially unconstitutional, a court must first find that the statute reaches a "substantial amount of constitutionally protected conduct"

or is "impermissibly vague in all of its applications." *See Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). *See also Whiting v. Town of Westerly,* 942 F.2d 18, 21 (1st Cir.1991).

 This Court finds that Section 1346 does not infringe upon core First Amendment freedoms or reach a "substantial amount of constitutionally protected conduct." In summary, the statute: 1) allows lobbyists, or anyone else, to communicate with and petition legislators, 2) does not prohibit, or affect in any way, lawful campaign contributions, and 3) prohibits only conduct intended to deprive the Commonwealth and its citizens of their right to the honest, lawful services of their legislators. Similar to other statutes and rules, the mail fraud statute puts reasonable restrictions on how lobbyists can interact with legislators. Lobbyists may still freely associate with, speak to, and lobby legislators, but they are prohibited from offering them gratuities to influence their conduct.

Furthermore, Section 1346 is not impermissibly vague "in all of its applications." Causing a public official to violate a state law governing the receipt of gratuities, for example, clearly deprives the public of honest services. Therefore, because there are situations that clearly violate Section 1346, it is not impermissibly vague in all of its applications.

The Court concludes that, because Section 1346 does not reach a "substantial amount" of constitutionally protected conduct and is not "impermissibly vague in all of its applications," it is not vague on its face. *See Id. See also Silvano,* 812 F.2d at 754 (upholding mail fraud conviction based upon intangible right to honest services).

**2. Section 1346 is not vague "as applied" to Sawyer**

 Because Sawyer's facial challenge to Section 1346 fails, the Court addresses whether the statute is vague on an "as applied basis." *Love v. Butler,* 952 F.2d 10, 13 (1st Cir.1991). In conducting its vagueness analysis, the Court must:

(a) assume that the defendant had constructive notice of both the statute in question and the case law interpreting that statute, *United States v. Harris,* 805 F.Supp. 166, 178 (S.D.N.Y.1992); and

(b) consider whether the statute "defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

The Court finds that, when taken together, Section 1346 and the case law elaborating on "intangible rights" mail fraud define the criminal offense alleged in this case with "sufficient definiteness." *See Id.* The Indictment charges Sawyer with devising a scheme that would cause Massachusetts legislators to violate Massachusetts statutes governing unlawful gratuities, the receipt of gifts and the disclosure of gifts. Such conduct, if proven, would clearly deprive the Commonwealth and its citizens of their intangible right to the honest service of their public officials. A public official cannot violate the statutes and rules that are implicated in this case without breaching his or her fiduciary duty.

The Court concludes that 1) Sawyer had fair warning that his conduct would constitute "honest service" mail fraud and 2) the mail fraud statute, though broad, does not unduly encourage arbitrary or discriminatory enforcement. *See Hoffman,* 455 U.S. at 495, 102 S.Ct. at 1191 ("[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others"); *Love,* 952 F.2d at 14 (where the mail fraud statute was found to have a scienter requirement which mitigates its vagueness).

Accordingly, the Court finds that 18 U.S.C. § 1346 is not vague, facially or as applied to Sawyer. The Court, therefore, will deny Sawyer's motion to dismiss the mail and wire fraud counts for vagueness.

**F. Sawyer's Motion to Dismiss the Mail Fraud Counts of the Indictment (Counts 2–16) Because There Were no Mailings in Execution of the Scheme to Defraud**

The government charges Sawyer with fifteen counts of mail fraud. An element of mail fraud is the use of the mails in the execution of the scheme to defraud. The mailings cited in the Indictment concern expenditures incurred by Sawyer in connection with his alleged gifts and gratuities to the legislators. More specifically, the mailings are alleged to be: credit card bills mailed to Sawyer (Counts 3, 8 and 10–16), golf club bills mailed to Sawyer (Counts 2, 4, 5, 7 and 9), and payments by Sawyer for golf and other entertainment expenses (Count 6).

In his motion to dismiss, Sawyer argues that those mailings were not sufficiently related to the alleged fraudulent scheme to constitute mail fraud under 18 U.S.C. § 1341. Sawyer contends that the manner in which he paid for the "shared hospitality" was immaterial to the alleged scheme.

The leading case in this area is *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). In *Schmuck,* the defendant purchased used cars, rolled back their odometers and resold the cars at an inflated price to retail auto dealers. Those unwitting retail dealers then resold the cars to individual purchasers, who, in turn, paid prices reflecting the defendant's fraud. To complete the resale of each car, the retail dealer, who purchased the car from the well-named defendant, submitted a title application form to the state department of transportation on behalf of the retail customer. *Id.* at 705–10, 109 S.Ct. at 1445–47.

The defendant in *Schmuck* argued that the mailing of the title application was too attenuated to constitute a "mailing in execution of mail fraud." The Supreme Court disagreed. It held that the mailing in question was sufficient to satisfy the mailing element of the mail fraud offenses and ruled that:

[t]o be part of the execution of the fraud ... the use of the mails need *not* be an essential element of the scheme.... *It is sufficient for the mailing to be "incident to*

an essential part of the scheme," or "a step in [the] plot."

*Id.* at 711, 109 S.Ct. at 1447 (citations omitted) (emphasis added). The Court went on to find that the mailings were derivative of the defendant's scheme and would not have occurred but for that scheme, explaining that:

[t]he relevant question at all times is whether the mailing is part of the execution of the scheme *as conceived by the perpetrator at the time,* regardless of whether the mailing later, through hindsight, may prove to have been counterproductive and return to haunt the perpetrator of the fraud.

*Id.* at 714, 109 S.Ct. at 1449–50 (emphasis added). *See generally* Abrams and Beale, *Federal Criminal Law and its Enforcement,* 176–79 (*citing* Ellen S. Podgor, *Mail Fraud: Opening Letters,* 43 Sup.Ct.Rev. 223, 258 (1992) (pointing out that, by focusing on the scheme *as conceived by the defendant,* the Court in *Schmuck* established a subjective test)).

The First Circuit Court of Appeals relied on *Schmuck* in a recent case, *United States v. Morrow,* 39 F.3d 1228 (1st Cir.1994). In that case, the First Circuit upheld the defendant's conviction and ruled that "a jury could reasonably conclude as a factual matter that the mailing was intended to and did serve to forward and shield the fraudulent scheme ..." *Id.* at 1236. The *Morrow* Court further held that, under the mail fraud statute:

[t]here is no requirement that the mailing be done by a party to the fraud so long as the mailing bears the requisite relationship to the fraudulent scheme. It is enough that [the defendant] participated in a crime in which it was foreseeable ... that the mails would be used.

*Id.* at 1237.

The mailings at issue in the case at bar include checks and credit card bills relating to Sawyer's alleged scheme to give unlawful gratuities and gifts to the Massachusetts legislators. The Court finds that a jury could reasonably conclude that, as a factual matter, such mailings were incidental to an essential element of the scheme: payment for the legislators' golf, meals and entertainment.

*See Schmuck,* 489 U.S. at 709, 109 S.Ct. at 1447; *United States v. Pacheco–Ortiz,* 889 F.2d 301, 306 (1st Cir.1989). Moreover, the record suggests that it was foreseeable, if not inevitable, that the scheme, as allegedly conceived by Sawyer, would make use of the mails. *See Morrow,* 39 F.3d at 1237; *United States v. Serino,* 835 F.2d 924, 928–29 (1st Cir.1987).

Because a reasonable jury could infer that the mailings were incidental to the scheme, as conceived by Sawyer, this Court will deny Sawyer's motion to dismiss based upon the lack of mailings.

### G. *Sawyer's Motion to Dismiss Travel Act Counts*

The Indictment charges Sawyer with eight counts of traveling in interstate commerce with the intent to commit Massachusetts gratuities offenses in violation of the Travel Act, 18 U.S.C. § 1952. Sawyer argues that the Court should dismiss the Travel Act counts because he did not commit the predicate state crimes of offering illegal gratuities to public officials.

The Court has previously declared that a jury could find that Sawyer did, in fact, give or offer unlawful gratuities to Massachusetts legislators. Consequently, because violations of the Massachusetts gratuities statute could constitute violations of the Travel Act, this Court will deny Sawyer's motion to dismiss the Travel Act counts.

### H. *Sawyer's Motion to Dismiss Conspiracy Count*

The Indictment charges Sawyer with one count of conspiracy to commit mail fraud, wire fraud and Travel Act violations. Sawyer argues that the conspiracy count should be dismissed because he did not engage in concerted activity to accomplish an "unlawful" purpose.

In making this motion, Sawyer apparently assumes the dismissal of all of the 32 substantive counts now pending against him. Because this Court will not dismiss the other 32 counts, it will also deny Sawyer's motion to dismiss the conspiracy count.

### I. *Sawyer's Motion to Certify Questions of State Law to the Supreme Judicial Court of Massachusetts*

▇▇▇ Sawyer argues that this Court should certify certain questions of interpretation of the Massachusetts "gift" statutes, M.G.L. c. 268B, §§ 5–7, to the Massachusetts Supreme Judicial Court because there is no controlling precedent governing the issues involved in this case.[5]

This Court will deny the defendant's motion for the following reasons:

(1) The Court finds that it has adequate authority to decide the issues pending before it.

(2) Notwithstanding the lack of case law directly on point, it is inappropriate for this Court to certify the proposed questions because the Court is confident that it can predict the answers. *See Nieves v. University of Puerto Rico,* 7 F.3d 270, 274–75 (1st Cir.1993) ("before this discretionary decision is even considered ... we must first undertake our own prediction of state law for we may conclude that: 'The course [the] state court[ ] would take is reasonably clear.' ") (citation omitted); *By–Rite Enterprises, Inc. v. Bruce Minor, Co.,* 757 F.2d 440, 443 n. 3 (1st Cir.1985) ("Although Massachusetts allows certification of difficult questions of state law to the Supreme Judicial Court, it is inappropriate for a federal court to use such a procedure when the course state courts would take is reasonably clear").

---

**5.** Supreme Judicial Court Rule 1:03 provides: This Court may answer questions of law certified to it by ... a United States District Court ... when requested by the certifying court if there are involved in any proceeding before it, questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to

the certifying court there is no controlling precedent in the decisions of this Court.
A certification order shall set forth:
(1) The question of law to be answered; and
(2) A statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose.

(3) The rule governing certification requires a description of the facts showing the full nature of the controversy. Without a trial the factual record here is, however, insufficient for certification.

## J. *Sawyer's Motion to Strike Surplusage from the Indictment*

Sawyer seeks to have this Court strike six separate allegations from the Indictment. The government has consented to Sawyer's motion with respect to two of the six allegations, but opposes striking the others.

### 1. Standard for Striking Surplusage from the Indictment

Fed.R.Crim.P. 7(d) states that: "The court on motion of the defendant may strike surplusage from the indictment or information." The rule provides a "means of protecting a defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." *Advisory Notes* to Fed.R.Crim.P. 7(d). *See also United States v. Poore*, 594 F.2d 39 (4th Cir.1979).

This District Court discussed the standard for striking "surplusage" in *United States v. Gambale*, 610 F.Supp. 1515, 1542–43 (D.Mass.1985) (Keeton, J.). In *Gambale*, Judge Keeton explained that a "motion to strike surplusage is granted only if the allegations are inflammatory, prejudicial, and irrelevant to the crime charged ..." *Id.* The determinative question in a motion to strike surplusage is not the prejudice, but the relevance of the allegation to the crime charged. "If the evidence of the allegation is admissible and relevant to the charge, then despite prejudice, the language will not be stricken." *Id.* (*quoting United States v. Napolitano*, 552 F.Supp. 465, 480 (S.D.N.Y.1982)). Because the standard is so exacting, alleged surplusage is rarely stricken. *Gambale*, 610 F.Supp. at 1543. *See also United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir.1990).

### 2. Motion to strike the word "favoritism" from paragraph 5

The government consents to this motion. The Court will, therefore, strike the word "favoritism" from paragraph 5 of the Indictment.

### 3. Motion to strike the phrase "other persons known and unknown" (which appears in some form in paragraphs 21, 34 and 38)

Sawyer objects to the allegation that he conspired with "other persons known and unknown" because it implies that he conspired with several other individuals, even though the government has named only one other co-conspirator, Hathaway. The government has also consented to this motion. The Court will, therefore, allow the substitution of the phrase "other person known" in place of the phrase "other persons known and unknown" in paragraphs 21, 34 and 38.

### 4. Motion to strike paragraph 8

Sawyer claims that paragraph 8, which summarizes the Massachusetts "gift" statutes, is prejudicial and factually incorrect. In light of its rulings in this Memorandum and Order, the Court finds that the government's summary of the Massachusetts statutes is accurate and thus relevant. Consequently, the Court will deny Sawyer's motion to strike paragraph 8. *See Gambale*, 610 F.Supp. at 1543.

### 5. Motion to strike paragraphs 17, 26 and 32(ii)

■■■ Paragraphs 17, 26 and 32(ii) all concern the legislators' alleged failure to disclose gifts that they wrongfully received from Sawyer. Because the government has not alleged that any particular legislator participated in Sawyer's scheme, Sawyer argues that the allegations describing 1) legislators' conduct and 2) the examination of SFIs by the public are irrelevant to this case. The government responds that Sawyer's knowledge of legislators' failure to disclose the gifts is relevant to his scheme.

The Court finds that if Sawyer knew that legislators failed to report the gifts that he allegedly gave to them, such knowledge would be relevant to his scheme. The Court is not convinced, however, that paragraph 17, which states that 10,000 requests were made to examine SFIs, is relevant. In any event,

the Court finds that neither paragraph 17, 26 nor 32(ii) prejudices the defendant at this time. The Court will, therefore, deny Sawyer's motion to strike paragraphs 17, 26 and 32(ii), without prejudice. Sawyer may make the motion again at the close of all evidence.

## ORDER

For the foregoing reasons, the defendant's eight motions to dismiss are **DENIED.** The government, however, will not be allowed to rely upon alleged violations of M.G.L. c. 3, § 43 to prove that the defendant engaged in a fraudulent scheme in violation of 18 U.S.C. §§ 1341 and 1343.

The defendant's motion to certify questions of state law to the Supreme Judicial Court of Massachusetts is **DENIED.**

The defendant's motion to strike the word "favoritism" and the phrase "other persons known and unknown" from the Indictment is **ALLOWED.** The defendant's motion to strike paragraph 8 from the Indictment is **DENIED.** The defendant's motion to strike paragraphs 17, 26 and 32(ii) is **DENIED,** without prejudice.

So Ordered.